UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
GELASIO ESPINOBARROS GALVEZ, SALVADOR     Docket No: 19-cv-08549
GALVEZ GARCIA, EUGENIO LUNA REYES,
PLACIDO GALVEZ NARVAEZ, and ALEXANDER
HERNANDEZ VICENTE,

Plaintiffs,

-against-

800 GINZA SUSHI INC. d/b/a GINZA JAPANESE
RESTAURANT, XIU LAN HUANG, and CHUN YONG
CHEN,

Defendants.
--------------------------------------------------------------------x


**MEMORANDUM OF LAW
IN OPPOSITION TO PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT**

Dated:  New York, NY
       March 19, 2021

*/s/ Vincent S Wong*
Vincent S. Wong, Esq. (VW9016)
Law Offices of Vincent S. Wong
39 East Broadway, Suite 306
New York, NY 10002
P: (212) 349-6099
F: (212) 349-6599

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES                                                          3

PRELIMINARY STATEMENT                                                         5

SUMMARY OF FACTS                                                             5

I.      SUMMARY JUDGMENT STANDARD                                           7

II.     THE REMAINS ISSUES OF MATERIAL FACT THAT PRECLUDES THE
        COURT FROM GRANTING SUMMARY JUDGMENT                                9

III.    PLAINTIFFS HAVE FAILED TO MEET ITS BURDEN THAT FLSA
        APPLIES                                                            10

IV.     DEFENDANTS DID NOT FAIL TO MAINTAIN PAYROLL RECORDS               11

V.      DEFENDANTS ARE ENTITLED TO TIP CREDIT                             13

VI.     THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S OVERTIME
        WAGE CLAIM SO AS TO PRECLUDE SUMMARY JUDGMENT                     15

VII.    THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S SPREAD OF
        HOURS CLAIM SO AS TO PRECLUDE SUMMARY JUDGMENT                    16

VIII.   THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S BICYCLES AND
        RELATED EQUIPMENT CLAIMS                                          17

IX.     THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S WAGE THEFT
        PREVENTION ACT CLAIMS SO AS TO PRECLUDE SUMMARY
        JUDGMENT AND PLAINTIFF HAS NOT MET ITS BURDEN                     18

X.      PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROVING
        "WILLFULNESS" BY DEFENDANTS                                       19

XI.     PLAINTIFFS SHOULD NOT BE AWARDED LIQUIDATED DAMAGES               20

XII.    PLAINTIFF MAY NOT CURE DEFICIENCIES IN ITS MOVING PAPERS
        IN ITS REPLY                                                      22

CONCLUSION                                                               22

# TABLE OF AUTHORITIES
## <u>Cases</u>

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598,
 26 L.Ed.2d 142 (1970)    8

*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247 (1986)    8, 12

*Berrios v. Nicholas Zito Racing Stable, Inc.,* 849 F.Supp.2d 372, 391 (E.D.N.Y. 2012)    20

*Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, 2010 WL 4159391,
at *2 (S.D.N.Y.2010)    13

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)    8

*Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. Mar. 30, 2006)    14

*Chung v. New Silver Palace Rest., Inc*., 246 F.Supp.2d 220, 229–30 (S.D.N.Y.2002)    13

*Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011)    14

*Gomez v. El Rancho de Andres Carne de Tres Inc., No*.
CV 2012-1264 CBA MDG, 2014 WL 1310296, at *7 (E.D.N.Y. Mar. 11, 2014)    13

*Guan Ming Lin v. Benihana New York Corp*., No. 10 CIV. 1335 RA JCF,
2012 WL 7620734, at *10 (S.D.N.Y. Oct. 23, 2012)    14, 18

*Hayes v. N.Y. City Dep't of Corr*., 84 F.3d 614, 619 (2d Cir.1996)    8, 9

*McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, (1988)    20

*Niagara Mohawk Power Corp. v. Jones Chem., Inc*., 315 F.3d 171, 175 (2d Cir.2003)    8

*Rudy v. Consol. Rest. Cos.,* No. 3:08–CV–0904–L (BF), 2010 WL 3565418,
 at *9 (N.D.Tex. Aug. 18, 2010)    14

*Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir.1996)    8, 9

*United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994)    8

*United States v. Noble Jewelry Holdings Ltd*., 08 Civ. 7826(JGK)(KNF),
2012 U.S. Dist. LEXIS 51675, at *13–14, 2012 WL 1228199 (S.D.N.Y. April 9, 2012)    22

*Young v. Cooper Cameron Corp.,* 586 F.3d 201, 207 (2d Cir. 2009)    19, 20

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 264 n.48 (S.D.N.Y. 2008)                13

*Wicaksono*, 2011 WL 2022644, at *5; *Chung v. New Silver Palace Rest., Inc.*,
246 F.Supp.2d 220, 229–30 (S.D.N.Y.2002)                13

## PRELIMINARY STATEMENT

This memorandum of law is respectfully submitted in opposition to Plaintiffs' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

## STATEMENT OF FACTS

Defendant Chun Yong Chen is the owner of 800 GINZA SUSHI INC. Defendant CHUN YONG CHEN managed the restaurant, paid employees, made the schedules.

Ginza shutdown at the beginning of the pandemic in March 2020, with the expectation of reopening. However, this did not happen and the landlord regained possession of the Premises and threw out/ dispossessed of the items in the restaurant, including records and computers kept by Defendants in the premises. (Chen Tr. Pg 110 ¶10 – 25)

Plaintiff are employees who worked for Defendants. They exact details of this employment is highly disputed.

Plaintiff Gelasio Espinobarros Galvez alleges that he worked at the restaurant from September 2014 to January 2018. (Amended Complaint ¶ 7). Plaintiff Gelasio Espinobarros Galvez went by the nickname "Michael" (**Exhibit F** Gelasio Tr. Pg 6-7). Defendants time records have Plaintiff Gelasio Espinobarros Galvez employed from September 28, 2014 to December 10, 2017 (See **Exhibit A pages 129-168**).

Plaintiff Salvador Galvez Garcia alleges that he worked at the restaurant from January 2015 to March 2017. (Amended Complaint ¶ 8). Plaintiff Salvador Galvez Garcia went by the nickname "Tony" (**Exhibit G** Salvador Tr. Pg 7) Defendants time records have Plaintiff Salvador Galvez Garcia employed from January 8, 2015 to March 17, 2017 (See **Exhibit A pages 169-195**).

Plaintiff Eugenia Luna Reyes alleges that he worked at the restaurant from October 2013 until the after the lawsuit started. (Amended Complaint ¶ 9). Plaintiff Eugenia Luna Reyes has testified that he was employed at the restaurant from October 15, 2015 to March 15, 2020 (**Exhibit H** Eugenia Tr. Pg 39) Plaintiff Eugenia Luna Reyes was also called Artemio (Eugenia Tr. Pg 77) . Defendants time records have Plaintiff Eugenia Luna Reyes employed from October 19, 2015 to February 28, 2020 (See **Exhibit A pages 22-74**).

Plaintiff Placido Galvez Narvaez alleges that he worked at the restaurant from January 2010 to September 2012 and again from February 22, 2013 to May 2018. (Amended Complaint ¶ 10). Plaintiff Placido Galvez Narvaez went by the nickname "Jose" (**Exhibit I** Placido Tr. Pg 7) Defendants time records have Plaintiff Placido Galvez Narvaez employed from January 20, 2014 to June 10, 2018 (See **Exhibit A pages 75-128**).

Plaintiff Alexander Hemandez Vicente alleges that he worked at the restaurant from December 15, 2017 until August 31, 2019. (Amended Complaint ¶ 11). Plaintiff Alexander Hemandez Vicente went by the nickname "Alex" (**Exhibit J** Alexander Tr. Pg 7)  Defendants time records have Plaintiff Alexander Hemandez Vicente employed from December 15, 2017 to August 31, 2019 (See **Exhibit A pages 1-21**).

Each of the Plaintiffs have alleged working various hours, starting at either 10am, 10:30am, or 11:30am, and ending at 9pm, 9:30pm, 10pm, 11pm, 11:30pm or even 12am, and to have worked about 60 to 70 hours per week (Amended Complaint ¶ 41-45). These times are directly contradicted by Defendants' time records, which shows Plaintiffs' working about 40 hours most weeks, with no start time before 10:30am (and often later) and no end time later than 11:30pm (often earlier) (See **Exhibit A).**

6

Each of the Plaintiffs alleges a different rate of pay, purportedly unchanging regardless of the hours worked, ranging from $525 per two weeks to as much as $1,040 per two weeks (Amended Complaint ¶ 41-45), while Defendants allege that Plaintiffs were paid an hourly rate (Chen Tr. Pg 114 ¶12 – pg 115 ¶7; 6 ¶9-13; pg97¶2-8; pg 77¶24 -pg75 ¶11).

It bares noting that the exact rate of pay and hours worked as alleged in the complaint, did not exactly match all of the Plaintiffs' testimony at deposition on these amounts and hours, much like the start and stop dates mentioned earlier. For example, Plaintiff Placido Galvez Narvaez alleges in the complaint that he was paid $1,040 every two weeks (Amended Complaint ¶ 45), at depositions this became $1,000 every 15 days, with it never reaching $1,040 ever (Placido Tr. Pg 50-51)

Plaintiffs all allege they were not given hiring statements, while Defendant Chen testified that he wrote down information including hourly pay rate, days worked, hours per day,  on a piece of paper and give it to employees, when discussing hiring them. (Chen Tr. Pg 92 ¶20 – pg 95 ¶21).

Plaintiffs allege they were given no pay statements, while Defendant Chen has testified to writing down pay information on envelopes he used to give Plaintiff their pay (Chen Tr. Pg 96 ¶9-13; pg97¶2-8; pg 77¶24 -pg75 ¶11 ).

Plaintiffs have all alleged numerous bicycles repairs made by Plaintiffs but collectively, have produced only a single receipt documenting these alleged repairs. (See **Exhibit C page 4**).

## I.      SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c), a motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

A fact is "material" for these purposes when it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248; *Celotex*, 477 U.S. at 322-26; *Doe v. Abington Friends Sch.*, 480 F.3d 252, 256 (2007).

The burden of demonstrating that no material fact exists lies with the party seeking summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). The party seeking summary judgment must initially provide the court with the basis for its motion. *Celotex Corp.*, 477 U.S. at 323.

When considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the nonmoving party, drawing all inferences in that party's favor. *Niagara Mohawk Power Corp. v. Jones Chem., Inc.*, 315 F.3d 171, 175 (2d Cir.2003). "[T]he judge must ask ... not whether ... the evidence unmistakably favors ones side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252, 106 S.Ct. 2505.

"Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir.1996); see also *Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir.1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."); *United States v. Rem*, 38 F.3d 634, 644 (2d Cir.1994)

Because there exist issues of material fact concerning the issues which Plaintiffs' seeks summary judgment, summary judgment is not appropriate.

## II.   THE REMAINS ISSUES OF MATERIAL FACT THAT PRECLUDES THE COURT FROM GRANTING SUMMARY JUDGMENT

Summary Judgment in this case is premature because there remains a multitude of material facts in dispute.

Defendants have produced time records for all of the Plaintiff's in this case (See **<u>Exhibit A</u>**), which directly contradicts Plaintiff's version of employment, at a minimum on the amount of time worked each week by each Plaintiff, and in some cases, on what dates they started and/or stopped working for Defendants.

The length of employment, as well as the number of hours worked is a key material fact in dispute.  While Plaintiffs allege working 60-70 hours per week, Defendants records show that some weeks some Plaintiffs did not even work 30 hours per week, let alone 40 (See **<u>Exhibit A page 2</u>**), and never worked anywhere close to 60 let alone 70 hours per week.

This dispute of hours also prevents a determination on if Plaintiffs were entitled to pay for spread of hours, as the parties do not agree on whether Plaintiffs worked more than 10 hours on a given work day. Defendants time records show that Plaintiffs did not work a spread of hours that exceed 10 hours most work days, while Plaintiffs allege that almost everyday did.

Further, the fact that the hours are in dispute, also prevents a determination on the wages in dispute, because Plaintiffs effective hourly wage changes drastically if using Defendants' time records for the time worked by each Plaintiff and Plaintiff's allegations on what they were paid, versus using Plaintiff's version of time worked and Plaintiff's allegation of what they were paid.

If this was not enough to preclude summary judgment, the amount paid to each Plaintiff is in dispute. Defendants assert that they paid in accordance with the minimum wage poster kept in the restaurant (Chen Tr. Pg 114 ¶12 – pg 115 ¶7), and Plaintiff's alleging they were paid a fixed amount each pay period.

Similar issues of fact exist as to hiring statements and wage statements. With Defendant Chen testifying to providing hiring statements (Chen Tr. Pg 92 ¶20 – pg 95 ¶21) and wage statements (Chen Tr. Pg 96 ¶9-13; pg97¶2-8; pg 77¶24 -pg75 ¶11), and Plaintiffs denying such.

Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Rule v. Brine, Inc*., 85 F.3d 1002, 1011 (2d Cir.1996); see also *Hayes v. N.Y. City Dep't of Corr*., 84 F.3d 614, 619 (2d Cir.1996)

As it is not the Court's role to assess credibility to choose versions of events, Summary Judgment should be denied.

## III.   PLAINTIFFS HAVE FAILED TO MEET ITS BURDEN THAT FLSA APPLIES

Plaintiffs have failed to present any evidence, or even allege sufficient facts that shows all elements that Defendants are covered by the FLSA, and as such has failed to meet its burden for summary judgment.

The Fair Labor Standards Act applies if an "enterprise engaged in commerce or in the production of goods for commerce," *id.* § 203(s)(1), which is further defined in relevant part as, first, having "employees engaged in commerce or in the production of goods for commerce, or … handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person," and, second, having an "annual gross volume of sales made or business done [that] is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." *Id.* § 203(s)(1)(A). Commerce is defined as "trade, commerce, transportation, transmission,

or communication among the several States or between any State and any place outside thereof." *Id.*
§ 203(b).

Defendants have stipulated that due to the fact that they were unable to get certain financial
records, due to their inadvertent destruction by the landlord as a result of the pandemic (Chen Tr. Pg
110 ¶10 – 25), that they would withdraw their defense of making less than $500,000 in gross income.
However, for the FLSA to apply Plaintiffs are also required to show that Defendants handled or
traded goods that traveled between the states. Plaintiffs, have made no such allegation in their
moving papers or Rule 56 statement. As such Plaintiff's have failed to pled and present evidence of
one of the elements they are required to prove on summary judgment, and their motion for summary
judgment as to their federal claims must be denied.

## IV.   DEFENDANTS DID NOT FAIL TO MAINTAIN PAYROLL RECORDS

Plaintiff argues that because Defendants did not maintain adequate records they are entitled
to summary judgment on the basis of Plaintiff's testimony alone. However, Defendants did
maintain records.

Defendants produced time records for the Plaintiffs. See **<u>Exhibit A</u>**. While Plaintiff argues
that these records are not sufficient because no punch clock or hand scan software was used,
there is no requirement that an employee make time records in such a fashion. Defendant Chen
testified sufficiently that he would track employees and note down when they came and left, and
that these were actual records, not just schedules. (Chen Tr. Pg 69 ¶2  –page 71¶17  23; Pg 75 ¶4
–8).

Defendants also testified about pay records that were kept, records were kept in the
Restaurant, however the Restaurant was closed down unexpectedly in March 2020, due to the
pandemic,  with the expectation of being able to go back, however the landlord regained

possession and threw everything out, without Defendants being able to retrieve records or numerous other items such as computers, papers, etc. (Chen Tr. Pg 110 ¶10 – 25).

Plaintiff seems to argue about spoilation sanctions in a footnote, but no motion for spoilation sanctions have been made in this case, let alone imposed. Additionally, the party most hurt by the loss of these pay records is Defendants, not Plaintiffs, as these records would support Defendants claims of proper pay. Plaintiffs have already been made whole by any supposed damage that they suffered by the loss of records, via a stipulation regarding gross income, which was made by the parties to help resolve the issue of the other missing records.

Plaintiff cites *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), where an alleged employer fails to maintain records, workers may rely on recollection alone to present evidence that they performed work for their employer for which they were not properly compensated, however, this does not change the burden of Plaintiff to prove their case. While, *Anderson*, mat allow Plaintiff to rely on recollections to prove work done by Plaintiffs, it does not relieve Plaintiffs of their burden, under summary judgment, nor somehow negate the records that Defendant did produce and which directly contradicts Plaintiff's supposed recollections.

Plaintiff also incorrectly argues that Defendants provide not evidence "testimonial or documentary" (Plaintiff's Memo Page 6), when Defendants have provided testimony.

Chen would explain to employees the rate of pay when he hired them, he would get a Spanish speaking person to help him. He would write down the information including hourly pay rate, days worked, hours per day,  on a piece of paper and give it to perspective employees. (Chen Tr. Pg 92 ¶20 – pg 94 ¶23). Chen did not use the sample wage notice from NY DOL but what he wrote down on the paper was very similar to this form, only hand written. (Chen Tr. Pg 94 ¶24 – pg 95 ¶21). Chen would write down wage information on the envelope, including pay

rate, overtime rate, total hours. (Chen Tr. Pg 96 ¶9-13; pg97¶2-8; pg 77¶24 -pg75 ¶11 ). Chen

paid employees according to the minimum wage posters he hung on the wall and the time

records he kept. (Chen Tr. Pg 114 ¶12 – pg 115 ¶7). See also **Exhibit A.**

 This testimony is evidence that Plaintiffs were paid properly. As such summary Judgment

should be denied.


### V. DEFENDANTS ARE ENTITLED TO TIP CREDIT

 "The FLSA permits employers to pay tipped employees an hourly rate below the minimum

wage if the employee's wages and tips, added together, meet or exceed the minimum wage. See

29 U.S.C. § 203(m). In order to benefit from the tip credit, the employer must first notify the

employees of its intention to include tip income when calculating wages actually paid for

minimum wage purposes and all such tips must have been retained by the employee. See 29

U.S.C. § 203(m); 29 C.F.R. § 531.59(b); *Cao v. Wu Liang Ye Lexington Restaurant, Inc.*, 2010

WL 4159391, at *2 (S.D.N.Y.2010) ; *Yu G. Ke v. Saigon Grill, Inc.*, 595 F.Supp.2d 240, 254

(S.D.N.Y.2008)." *Gomez v. El Rancho de Andres Carne de Tres Inc., No*. CV 2012-1264 CBA

MDG, 2014 WL 1310296, at *7 (E.D.N.Y. Mar. 11, 2014) report and recommendation adopted,

No. 12-CV-1264 CBA MDG, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014)

 "To take advantage of such a credit, an employer must inform its employees that tips are

being credited against their wages. See 29 U.S.C. § 203(m) & 12 NYCRR 146–1.3. In addition,

the employer must refrain from withholding any portion of the employees' tips or requiring some

employees to share the tips they receive with non-service employees, such as managers or

kitchen staff, who do not customarily and regularly receive tips. *Wicaksono*, 2011 WL 2022644,

at *5; *Chung v. New Silver Palace Rest., Inc*., 246 F.Supp.2d 220, 229–30 (S.D.N.Y.2002); see

also *Chan v. Triple 8 Palace, Inc.*, 2006 WL 851749, at *14 (S.D.N.Y. Mar. 30, 2006)." *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 89 (E.D.N.Y. 2012).

"*Rudy v. Consol. Rest. Cos.,* No. 3:08–CV–0904–L (BF), 2010 WL 3565418, at *9 (N.D.Tex. Aug. 18, 2010) ("Explaining that an employee would make $2.15/hour plus tips and that they would participate in a tip pool has been determined to be sufficient notice under Section 203(m).")." *Copantitla v. Fiskardo Estiatorio, Inc*., 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011)

In this case, Plaintiffs do not contend that Defendants withholds any portion of the employees' tips or that Plaintiff was required to share tips he received with non-eligible employee. Nor does Plaintiff contend that the tips received by him were insufficient for the tip credit claimed.

Instead Plaintiff claims that Defendant is not entitled to a tip credit because Plaintiffs did not receive sufficient notice of the tip credit and because Plaintiffs allegedly spent more than 2 hours per day doing side work.

As to notice Chen testified that Chen would explain to employees the rate of pay when he hired them, he would get a Spanish speaking person to help him. He would write down the information including hourly pay rate, days worked, hours per day, on a piece of paper and give it to perspective employees. (Chen Tr. Pg 92 ¶20 – pg 94 ¶23). Chen did not use the sample wage notice from NY DOL but what he wrote down on the paper was very similar to this form, only hand written. (Chen Tr. Pg 94 ¶24 – pg 95 ¶21). Chen paid employees according to the minimum wage posters he hung on the wall and the time records he kept. (Chen Tr. Pg 114 ¶12 – pg 115 ¶7).

By providing written statements in writing about Plaintiff's rate of pay, at hiring, Defendants provided notice, in writing, about the tip credit Defendants intended to take.

Further Chen testified that Defendants ensured that employees received at least $20 in tips per day, calculated at 8 hour x $2.50 per hour. (Chen Tr. Pg 101 ¶9  –pg 102¶5).

While Plaintiff cites to  some of the Plaintiffs' testimony claiming that Defendants never talked to them about tips, this again just shows that issues of fact exist, with contradicting versions of events, which should preclude summary judgment.

As to the allegations of more than 2 hours of side work preventing the claiming of tips, the US Department of Labor has abandoned the "80/20 Rule" for tipped employees and reissued the Opinion Letter from 2009 affecting 29 C.F.R. § 531.56(e). This revision allows for the employees to perform side work related to their job and still receive tip credit even if those related tasks are not specifically directed towards producing or generating tips. As such, Plaintiffs allegations of working for more than 2 hours on side work would not prevent the assertion of tip credit.

## VI.   THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S OVERTIME WAGE CLAIM SO AS TO PRECLUDE SUMMARY JUDGMENT

Plaintiff next moves for summary judgment on the issue of Plaintiff's overtime wage claim. Like the issues raised previously, this issue can not be determined at this time as their remains material issues of fact, as to how long Plaintiffs worked.

While, Plaintiffs maintain that a lack of pay records would somehow preclude Defendants from demonstrating that Plaintiffs did not work over 40 hours per week, and again asserts that no records were produced that show the time Plaintiffs worked, this is not the case. Defendants Exhibit A clearly shows the amount of time each Plaintiff was employed on each day that Plaintiffs worked for Defendants. These records show that Plaintiffs did not work the 60-70 hours alleged, but instead worked around 40 hours per week, often less.

Plaintiff has provided no basis for the court to ignore the records that Defendants did produce, which in this case are accurate time records of the time Plaintiffs worked. While Plaintiffs disputes these records, that does not entitle Plaintiff to Summary Judgment.

With the existence of disputed facts as to the amount of time Plaintiffs worked each week, summary judgment must be denied.

## VII.   THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S SPREAD OF HOURS CLAIM SO AS TO PRECLUDE SUMMARY JUDGMENT

Plaintiff next moves for summary judgment on the issue of Plaintiff's spread of hours claim. Like the issues raised previously, this issue cannot be determined at this time as their remains disputes on the hours worked. These disputes are backed by Defendants produced time records (**Exhibit A**).

N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.6.  provides that "on each day on which the spread of hours exceeds 10, an employee shall receive one additional hour of pay at the basic minimum hourly rate."

For Plaintiff to have meet its burden on this issue, Plaintiff would need to prove, through undisputed facts that Plaintiff worked more than 10 hours while employed for Defendant AND that Plaintiff was not adequately paid for said days in which Plaintiff worked more than 10 hours.

This issue can not be determined because all the required facts, the hours worked and amount paid are disputed.

As such this issue must also be denied as there remains material issues of facts which preclude summary judgment.

VIII.   **THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S BICYCLES AND RELATED EQUIPMENT CLAIMS**

Plaintiff next moves for summary judgment on the issue of Plaintiff's bicycles and related equipment claims. Plaintiffs allege, without any documentary evidence (except 1 receipt for only 1 of the 4 deliverymen plaintiffs) that Plaintiffs were required to buy multiple bicycles make multiple repairs, and buy equipment related to the job.

Setting aside the almost complete lack of documentary evidence of all these supposed expenses, even the equipment purchased is in dispute. Chen testified that he provided employees with helmets and vests. (Chen Tr. Pg 83 ¶14 – 21). Chen also paid for baskets for the bikes (Chen Tr. Pg 84 ¶20-24). Plaintiffs on the other hand claim to have purchased all these items and to have taken these items with them when they left. (Salvador Tr. Pg 73¶2 -pg75¶9).

Obviously, both versions of events could not have happened, with either Plaintiff or Defendants purchasing the helmets, vests, etc.

Additionally, all parties agree that Plaintiffs never asked for reimbursement for these items, and as such the burden is on Plaintiff to produce evidence of these expenses, as only Plaintiffs could have obtained such. At least one Plaintiff, continued to be employed as a deliveryman after this lawsuit was commenced, Plaintiff Eugenia Luna Reyes. Despite this and the supposed constant need for repairs all Plaintiffs alleged, Plaintiff Eugenia Luna Reyes has not a single receipt to document a single repair made in the nearly 4 month period that he continued to work at the restaurant after suit was filed and he was on notice of the need to preserve evidence.

As such, Plaintiffs have not met their burden, and at minimum issues of facts continue to exist regarding this issue, so as to preclude summary judgment.

IX.    THERE REMAIN ISSUES OF FACT ON PLAINTIFF'S WAGE THEFT
       PREVENTION ACT CLAIMS SO AS TO PRECLUDE SUMMARY
       JUDGMENT AND PLAINTIFF HAS NOT MET ITS BURDEN

Plaintiff next moves for summary judgment on the issue of Plaintiff's wage prevention

act claims. Like the issues raised previously, this issue can not be determined at this time as

their remains material issues of fact, as to whether Plaintiffs were properly paid and if

Plaintiffs received adequate notices..

"In order to establish the defendants' liability, the plaintiffs must (1) establish that the

wage statements the defendants provided did not satisfy the requirements under NYLL §

195(3), and (2) overcome the defendants' affirmative defense that they made "complete and

timely payment of all wages due."" *Guan Ming Lin v. Benihana New York Corp*., No. 10

CIV. 1335 RA JCF, 2012 WL 7620734, at *10 (S.D.N.Y. Oct. 23, 2012) report and

recommendation adopted, No. 10 CIV. 1335 RA JCF, 2013 WL 829098 (S.D.N.Y. Feb. 27,

2013)

Both N.Y. Lab. Law § 198 (1-b) and N.Y. Lab. Law § 198  (1-d) have provisions that

state that "it shall be an affirmative defense that (i) the employer made complete and   timely

payment of all wages due" to the claims for damages for under these statutes.

Defendants have asserted this defense and represented that Defendant was adequately paid

minimum wage and overtime. Chen paid employees according to the minimum wage posters he

hung on the wall. (Chen Tr. Pg 114 ¶12 – pg 115 ¶7).

Chen has also testified that Chen would explain to employees the rate of pay when he hired

them, he would get a Spanish speaking person to help him. He would write down the information

including hourly pay rate, days worked, hours per day,  on a piece of paper and give it to

perspective employees. (Chen Tr. Pg 92 ¶20 – pg 94 ¶23). Chen did not use the sample wage notice from NY DOL but what he wrote down on the paper was very similar to this form, only hand written. (Chen Tr. Pg 94 ¶24 – pg 95 ¶21).

Chen also testified that he would write down wage information on the envelope, including pay rate, overtime rate, total hours. (Chen Tr. Pg 96 ¶9-13; pg97¶2-8; pg 77¶24 -pg75 ¶11 ).

While, Plaintiffs try to use their exhibit 3 as an example of improper notice, Chen testified changed the way he paid employees after he was sued  in 2015. (Chen Tr. Pg 76 ¶25 – pg 77¶10); Chen testified he changed what he put on the envelopes he gave employees including total hours (Chen Tr. Pg 77 ¶24 – pg 78 ¶11). Plaintiffs have provided no evidence that these envelopes represent what was received after the change. Further Plaintiff testified that Exhibit 3 did not match their recollections of how they were paid. (Placido Tr. Page 101);

As such an issue of fact exists as to the adequacy of the notices and to the second element that Plaintiff must prove to show liability, and as such this branch of Plaintiff's motion must be denied.

While Plaintiff disputes the adequacy of Defendants payments to Plaintiff, this is an issue of fact, which would preclude summary judgment, and as such Plaintiff's motion must be denied.

## X.   PLAINTIFFS DO NOT MEET THEIR BURDEN OF PROVING "WILLFULNESS" BY DEFENDANTS

Plaintiffs have alleged that Defendants' FLSA violations were "willful," thus triggering the three year statute of limitations. However, the record is absolutely devoid of any evidence that would support such a position.

"An employer willfully violates the FLSA when it 'either knew or showed reckless disregard for the matter of whether its conduct was prohibited by' the Act." *Young v. Cooper*

*Cameron Corp.,* 586 F.3d 201, 207 (2d Cir. 2009) *(quoting McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 133, (1988). "Mere negligence on the part of the employer will not suffice," *(Berrios v. Nicholas Zito Racing Stable, Inc.,* 849 F.Supp.2d 372, 391 (E.D.N.Y. 2012) *(citing McLaughlin, supra,* 486 U.S. at 133)), and "[t]he burden of proving willfulness lies with the employee." *Berrios, supra* (citations omitted).

The courts within this Circuit have generally "left the question of willfulness to the trier of fact." *Id.*

There is no evidence on the record that would support a claim that Defendants' acted willfully in their alleged violation of the FLSA.

Chen testified  changed the way he paid employees after he was sued  in 2015, generally paying more. (Chen Tr. Pg 76 ¶25 – pg 77¶10); Chen testified he changed what he put on the envelopes he gave employees including total hours (Chen Tr. Pg 77 ¶24 – pg 78 ¶11). The actions, would indicate a change by Defendants to try and comply with the FLSA.

While Plaintiffs dispute these changes, this is again an issue of fact which would preclude summary judgment.

## XI.    PLAINTIFFS SHOULD NOT BE AWARDED LIQUIDATED DAMAGES

Plaintiffs next argue that the should be awarded liquidated damages because Defendants did not act in good faith. Plaintiffs argue that the fact Defendants do not have their pay records shows inherent lack of good faith but this is not the case.

Unlike the case cited to by Plaintiffs, Defendants had records but they were lost due to unforeseen circumstances. Defendants did not anticipate the pandemic shutting down the restaurant. Defendants did not anticipate the landlord taking back possession after the shutdown

and throwing out all the items in the restaurant. The pandemic itself is unprecedented having thrown the city, the state and the country into unforeseeable upheaval.

Defendants are already prejudiced by the loss of the records they kept, it would be unjust to further hold unforeseeable event as proof of a lack of good faith.

Chen testified that  Chen testified  changed the way he paid employees after he was sued in 2015, generally paying more. (Chen Tr. Pg 76 ¶25 – pg 77¶10); Chen testified he changed what he put on the envelopes he gave employees including total hours (Chen Tr. Pg 77 ¶24 – pg 78 ¶11). The actions, would indicate a change by Defendants to try and comply with the FLSA, good faith not bad.

Chen's testimony of his actions, that he would explain to employees the rate of pay when he hired them, he would get a Spanish speaking person to help him. He would write down the information including hourly pay rate, days worked, hours per day,  on a piece of paper and give it to perspective employees. (Chen Tr. Pg 92 ¶20 – pg 94 ¶23) and that Chen paid employees according to the minimum wage posters he hung on the wall and the time records he kept. (Chen Tr. Pg 114 ¶12 – pg 115 ¶7), would all show that Defendants were trying to act in good faith after learning their mistakes previously.

As such the court should not find that Defendants did not act in good faith and should not award liquidated damages.

## XII.   PLAINTIFF MAY NOT CURE DEFICIENCIES IN ITS MOVING PAPERS IN ITS REPLY

To the extent that Plaintiff has not meet its burden of summary judgment in its moving and attempts to cure said deficiencies in its reply papers, this should not be permitted by the court.

In *United States v. Noble Jewelry Holdings Ltd.*, 08 Civ. 7826(JGK)(KNF), 2012 U.S. Dist. LEXIS 51675, at *13–14, 2012 WL 1228199 (S.D.N.Y. April 9, 2012) the court refused to consider new evidence submitted by movant on reply where such evidence was "not submitted in response to any new material issues raised" in the opposition papers.  The reason to refuse consideration of such evidence "submitted for the first time in reply" is that it "would be fundamentally unfair to the [non-moving party], because it would deprive [said party] of an opportunity to respond." *Id.*

### CONCLUSION

For all the foregoing reasons, Plaintiff's Motion for Summary Judgment should be denied in all respects.


Dated: New York, NY
      March 19, 2021

                                   */s/ Vincent S Wong*
                                   Vincent S. Wong, Esq. (VW9016)
                                   Law Offices of Vincent S. Wong
                                   39 East Broadway, Suite 306
                                   New York, NY 10002
                                   P: (212) 349-6099
                                   F: (212) 349-6599