UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                  :

GELASIO ESPINOBARROS GALVEZ, SALVADOR  :
GALVEZ GARCIA, EUGENIO LUNA REYES,       :
PLACIDO GALVEZ NARVAEZ, and ALEXANDER  :
HERNANDEZ VICENTE,                        :               19 Civ. 8549 (JPC)
                                  :
             Plaintiffs,             :             OPINION AND ORDER
                                  :
             -v-                    :
                                  :
800 GINZA SUSHI INC. d/b/a GINZA JAPANESE   :
RESTAURANT and CHUN YONG CHEN,       :
                                  :
             Defendants.            :
                                  :
------------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

     Chun Yong Chen ("Chen") owned 800 Ginza Sushi Inc. ("Ginza"), which operated a sushi restaurant just east of Central Park in Manhattan. Four of the restaurant's former delivery workers and a former dishwasher have sued Ginza and Chen for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, and the New York Labor Law ("NYLL"). Plaintiffs allege that Defendants did not pay them the minimum wage, overtime, or spread-of-hours compensation; illegally required the delivery worker Plaintiffs to purchase and maintain their own bicycles and to purchase various related equipment without reimbursement; and did not provide Plaintiffs wage notices and statements as required under New York law. With discovery now concluded, Plaintiffs have moved for summary judgment on liability with respect to all wage-and-hour and notice claims, as well as concerning Defendants' willfulness and Plaintiffs' entitlement to liquidated damages.

For reasons that follow, the Court grants Plaintiffs summary judgment as to liability on most of their wage-and-hour claims, with the exception being their tools-of-the-trade claims that pertain to their alleged purchases of bicycle gear.  The undisputed material facts further establish that Ginza's business activities came within the scope of the FLSA, Chen is individually liable for any federal and state labor law violations, Defendants acted willfully in violating the FLSA's minimum wage and overtime provisions (triggering an extended three-year federal statute of limitations), and that Plaintiffs are entitled to liquidated damages as to their minimum wage, overtime, and spread-of-hours claims.  Questions remaining for trial therefore consist of (1) Defendants' liability on the bicycle gear component of Plaintiffs' tools-of-the-trade claims, (2) whether Defendants willfully violated the FLSA's tools-of-the-trade provisions, (3) whether Plaintiffs are entitled to liquidated damages to remedy Defendants' violations of the FLSA's and the NYLL's tools-of-the-trade provisions, (4) Defendants' liability on Plaintiffs' unjust enrichment claims, and (5) a determination of damages.

## I. Background

### A. Facts[1]

Ginza operated Ginza Japanese Restaurant, a now-defunct establishment formerly located at 800 Lexington Avenue in Manhattan.  Defts. 56.1 Stmt. ¶ 3.  Plaintiffs worked at Ginza for varying periods between 2010 and 2020.  *Id.* ¶ 1; Chen Dep. Tr. at 20:15-21:4.  According to their deposition testimony, Gelasio Espinobarros Galvez ("Espinobarros Galvez") worked at Ginza from September 21, 2014 through early January 2018, Espinobarros Galvez Dep. Tr. at 37:7-39:6; Salvador Galvez Garcia ("Galvez Garcia") worked at Ginza from January 2015 through March 2017, Galvez Garcia Dep. Tr. at 33:24-34:4; Eugenio Luna Reyes ("Luna Reyes") worked at Ginza from October 15, 2015 through March 15, 2020, Luna Reyes Dep. Tr. at 39:8-17; Placido Galvez Narvaez ("Galvez Narvaez") worked at Ginza from January 2010 through September 2012 and then again from February 2013 through May 2018, Galvez Narvaez Dep. Tr. at 29:2-31:10; and

---

[1] The facts discussed herein are drawn from Plaintiffs' statement of material facts pursuant to Local Civil Rule 56.1, Dkt. 63; Defendants' counter-statement pursuant to Rule 56.1, Dkt. 66 ("Defts. 56.1 Stmt."); the declarations submitted in support of and in opposition to Plaintiffs' motion, Dkts. 64 ("Sprotzer Declaration"), 67 ("Wong Declaration"); and any exhibits attached to those declarations, including the transcripts of the parties' depositions, Wong Declaration, Exh. F ("Espinobarros Galvez Dep. Tr."); Exh. G ("Galvez Garcia Dep. Tr."); Exh. H ("Luna Reyes Dep. Tr."); Exh. I ("Galvez Narvaez Dep. Tr."); Exh. J ("Hernandez Vicente Dep. Tr."); Exh. K ("Chen Dep. Tr."), and the time records allegedly maintained by Chen, *id.*, Exh. A ("Chen Time Records").

The Court disregards Defendants' efforts to dispute facts asserted in Plaintiffs' Rule 56.1 statement where Defendants fail to cite admissible evidence to support the asserted dispute.  *See* Loc. Civ. R. 56.1(d) ("Each statement by the movant or opponent pursuant to Rule 56.1(a) and (b), including each statement controverting any statement of material fact, must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)."); *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001) ("[D]istrict courts in the Southern and Eastern Districts of New York have interpreted current Local Rule 56.1 to provide that where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion." (quotation marks and alterations omitted)).  Accordingly, the Court cites to only Defendants' counter-Rule 56.1 statement where the parties do not dispute the fact, Defendants have not offered admissible evidence to refute the fact, or Defendants simply seek to add their own "spin" on the fact or otherwise dispute the inferences from the stated fact.

Alexander Hernandez Vicente ("Hernandez Vicente") worked at Ginza from December 15, 2017 through August 31, 2019, Hernandez Vicente Dep. Tr. at 36:11-17.  *Cf.* Chen Time Records (reflecting slightly different start and end dates for certain Plaintiffs).  Four Plaintiffs— Espinobarros Galvez, Galvez Garcia, Luna Reyes, and Hernandez Vicente—worked as delivery workers, while Galvez Narvaez was primarily a dishwasher.  Defts. 56.1 Stmt. ¶ 2.

Chen owned Ginza from the restaurant's opening in 2004 or 2005 until its closing in March 2020, acting as Ginza's Chief Executive Officer.  Chen Dep. Tr. at 20:17-21:15; Defts. 56.1 Stmt. ¶ 4.  As Ginza's "manager and boss," Chen hired, fired, supervised, and directed the restaurant's employees, including setting the delivery workers' and dishwashers' hours and wages.  Defts. 56.1 Stmt. ¶¶ 6-11; Chen Dep. Tr. at 58:4-9, 61:2-63:2, 64:9-65:5.  Similarly, Plaintiffs all knew Chen, who went by the name "Jacky," to be an owner of Ginza and/or someone responsible for paying their salaries.[2]  *See* Defts. 56.1 Stmt. ¶ 4; Espinobarros Galvez Dep. Tr. at 57:21-58:18; Galvez Garcia Dep. Tr. at 35:16-17, 41:6-7, 43:9-12; Luna Reyes Dep. Tr. at 41:10-12, 59:10-20; Galvez Narvaez Dep. Tr. at 63:3-6; Hernandez Vicente Dep. Tr. at 53:18-21.

### 1.  Defendants' Recordkeeping

Defendants have not produced written records reflecting the wages paid to Plaintiffs during their employment and maintain that any such records have been lost.  Defts. 56.1 Stmt. ¶¶ 19-22.  Chen testified that he paid Plaintiffs in cash and handwrote their wages in two notebooks.  Chen Dep. Tr. at 34:25-37:24; Defts. 56.1 Stmt. ¶¶ 22-23.  Chen said that he kept the first notebook at home, but lost it some point, and then started a new notebook, which he lost in March 2020.  Chen Dep. Tr. at 36:20-37:22, 110:6-14.  Defendants further contend that they kept certain business

---

[2] Certain Plaintiffs mentioned that another individual, "Kevin," also owned the restaurant and occasionally paid their salaries.  *See* Espinobarros Galvez Dep. Tr. at 57:21-58:18; Luna Reyes Dep. Tr. at 52:4-13, 59:18-20; Hernandez Vicente Dep. Tr. at 53:18-21.

records at the restaurant, including on a computer, but their landlord discarded those records when the restaurant was closed in March 2020. Defts. 56.1 Stmt. ¶ 22; *see* Chen Dep. Tr. at 42:19-43:12, 103:2-5.[3]  Defendants acknowledge that they never maintained records of tips received by the delivery workers. Defts. 56.1 Stmt. ¶ 19; *see* Chen Dep. Tr. at 101:9-15 (Chen testifying: "I did not record each person get how much tip.  And I just paid them on the spot and paid them cash. And the record in the computer is the total tips of the whole restaurant received.").

While Chen acknowledged at his deposition that he did not use the same wage notice issued by the New York State Department of Labor, he insisted that he instead gave his employees a handwritten explanation of their rates of pay and schedules during the hiring process.  Chen Dep. Tr. at 93:4-12, 94:13-95:21; *see* Defts. 56.1 Stmt. ¶ 52.  Chen did not retain copies of any such papers, Chen Dep. Tr. at 93:23-25, but he described them as follows:

> This is not a formal document.  It's just a piece of paper to explain it to this new hire that -- how many days he should work, every day from what time to what time, and what day he should be -- his day off and what's the hourly rate.  And so he can bring it home with him and -- because they may not make the decision on the spot. And this is something to explain it to them and clearly.  And they usually either throw them away if they decided to work or they take it with them home.  And I never keep them myself.

*Id.* 94:13-23.  Plaintiffs denied, however, that Chen provided such notices.  Espinobarros Galvez Dep. Tr. at 41:24-43:16; Galvez Garcia Dep. Tr. at 40:25-42:4; Luna Reyes Dep. Tr. at 43:10-13; Hernandez Vicente Dep. Tr. at 42:16-43:9.

---

[3] The Court notes that Defendants claim to have lost Chen's second notebook and the records stored at the restaurant approximately six months after Defendants were served with the original complaint on September 19, 2019, Dkts. 15, 16, and after Chen had reviewed Plaintiffs' December 23, 2019 discovery requests seeking such records, Defts. 56.1 Stmt. ¶ 23; Sprotzer Declaration, Exh. 1.  Chen acknowledged at his deposition that he was aware of his obligation to retain any documents related to the case once learning that this lawsuit had been filed.  Chen. Dep. Tr. at 37:25-38:3, 44:7-13.

Defendants paid Plaintiffs their biweekly wages by cash enclosed in envelopes.  Defts. 56.1 Stmt. ¶ 51.  Chen testified that he wrote payment information, including wages, overtime rates, and hours, on the envelopes.  Chen Dep. Tr. at 77:24-78:11, 96:9-13, 97:2-8.  Plaintiffs, however, all testified that Chen did not do that, instead recalling that the envelopes only had writing in a foreign language, presumably Chinese, that may have been their names.  Espinobarros Galvez Dep. Tr. at 79:3-9; Galvez Garcia Dep. Tr. at 56:10-15; Luna Reyes Dep. Tr. at 60:4-12; Galvez Narvaez Dep. Tr. at 85:10-18; Hernandez Vicente Dep. Tr. at 55:2-11.

The parties dispute whether Defendants maintained contemporaneous time records for the hours each Plaintiff worked.  Defts. 56.1 Stmt. ¶ 14.  Chen testified that while his employees did not record their "time in or out anywhere," Chen Dep. Tr. at 73:11-13, he tracked their schedules on his tablet, *id.* at 69:2-7.  Defendants produced time records allegedly representing Plaintiffs' time worked.  *See generally* Chen Time Records.  Chen also testified that he did not record hours employees worked during their scheduled breaks unless he had requested them to work during that break.  Chen Dep. Tr. at 75:4-16.  Most of the Plaintiffs, on the other hand, testified that no one at the restaurant tracked their hours.  Galvez Garcia Dep. Tr. at 47:18-25; Luna Reyes Dep. Tr. at 93:19-94:4; Galvez Narvaez Dep. Tr. at 71:24-72:13; Hernandez Vicente Dep. Tr. at 49:6-12.[4]

## 2.  Plaintiffs' Wages

At their depositions, Plaintiffs testified that Defendants paid them the following flat biweekly salaries: Espinobarros Galvez at $600 from September 2014 to January 2018, Espinobarros Galvez Dep. Tr. at 37:7-38:9, 46:3-16; Galvez Garcia at $600 from January 2015 to

---

[4] Espinobarros Galvez testified at his deposition that "Kevin" tracked the time Espinobarros Galvez worked at the restaurant.  Espinobarros Galvez Dep. Tr. at 67:2-13.  And Luna Reyes testified that while no one was assigned to keep track of the employees' hours, "the owners would be present most of the time and they were always involved in watching."  Luna Reyes Dep. Tr. at 65:23-66:15.

March 2017, Galvez Garcia Dep. Tr. at 33:24-34:4, 41:8-17, 41:22-24, 43:9-12; Luna Reyes at

$525 from October 2015 to about June 2019, Luna Reyes Dep. Tr. at 39:8-17, 59:2-6, 60:20-24;

Galvez Narvaez at $800 both from January 2010 to September 2012 and from February 2013 to

early 2018, and then increased to $1,000 at some point in early 2018 until May 2018, Galvez

Narvaez Dep. Tr. at 29:4-31:10, 49:14-50:20, 75:16-18; and Hernandez Vicente at $550 from

December 15, 2017 to around March 2019, and then $600 from around March 2019 to August 31,

2019, Hernandez Vicente Dep. Tr. at 36:11-17, 44:5-18, 49:16-25.  *See* Defts. 56.1 Stmt. ¶¶ 28-

29.  Luna Reyes further testified that, starting in approximately June 2019 through March 15, 2020,

he was paid a daily salary of $60 and worked six days per week.  Luna Reyes Dep. Tr. at 58:18-

23, 60:20-24; Defts. 56.1 Stmt. ¶ 29.  Defendants deny these assertions, citing Chen's deposition

testimony that he paid Plaintiffs more if they worked over forty hours in a week, and that he paid

Plaintiffs in accordance with the minimum wage posters he hung on the restaurant's wall.  Defts.

56.1 Stmt. ¶ 29; *see* Chen Dep. Tr. at 114:12-115:7; *see also* Chen Dep. Tr. at 98:2-8 (testifying

that when delivery workers and dishwashers worked more than forty hours in a week, he would

pay them an overtime rate of 1.5 times their salary).

      The four Plaintiffs who worked as delivery workers also received tips.  Defts. 56.1 Stmt.

¶ 33.  As noted, Defendants did not track those tips.  *Id.* ¶ 19.  Chen explained that dishwashers

and delivery workers were paid differently because the dishwashers "don't get tips."  Chen Dep.

Tr. at 102:6-11.  Defendants did not inform the delivery worker Plaintiffs that their tips would be

used as a credit against their wages, provide written notice of the amount of tip credit, or obtain

signed acknowledgments of Plaintiffs' receipt of such notice.  Defts. 56.1 Stmt. ¶¶ 35-36.[5]

---

[5] While Defendants deny these statements, the Court discusses why Defendants' evidence
fails to genuinely dispute them below.

### 3.   Plaintiffs' Hours

The parties dispute the number of hours that Plaintiffs worked at Ginza.  *See id.* ¶ 24.

Plaintiffs each testified that they regularly worked more than sixty hours per week and shifts of

more than ten hours.  Espinobarros Galvez Dep. Tr. at 42:19-43:6 (approximately 74 hours per

week, with shifts from 10:30 a.m. to 9:30 p.m. and 11:30 a.m. to 11:30 p.m.); Galvez Garcia Dep.

Tr. at 42:7-43:5 (approximately 61.5 hours per week, with shifts that included from 10:30 a.m. to

9:30 p.m. and 11:30 a.m. to 11:00 p.m.); Luna Reyes Dep. Tr. at 58:18-23 (approximately 66 hours

per week, with shifts from 10:30 a.m. to 9:30 p.m.); Galvez Narvaez Dep. Tr. at 37:5-20, 62:6-16,

75:5-11 (approximately 72 hours per week, normally working from 12:00 p.m. until between

11:00 p.m. and midnight); Hernandez Vicente Dep. Tr. at 45:7-18 (approximately 67.5 hours per

week, with shifts from 10:30 a.m. to 9:30 p.m. and 11:30 a.m. to 11:00 p.m.).  While the Chen

Time Records reflect that Plaintiffs worked fewer hours per week than they testified, those records

still show that each Plaintiff often worked over forty hours per week and that ten hours regularly

lapsed between the start and end of their workdays.  *See generally* Chen Time Records.  In addition

to disputing the hours Plaintiffs worked, the parties also dispute the extent to which Plaintiffs

received breaks.  *See* Defts. 56.1 Stmt. ¶¶ 25-26.

### 4.   Plaintiffs' Bicycles and Gear

The delivery workers at Ginza made food deliveries on bicycles throughout the day.  *Id.*

¶¶ 41, 43.  Chen required these delivery workers to use bicycles, and only hired delivery workers

who had bicycles.  Chen Dep. Tr. at 82:7-11 ("They all have their bike.  And if they don't have a

bike, they don't come here to work as a delivery person."); *see* Galvez Garcia Dep. Tr. at 65:22-

66:3 (testifying that he was required to have a bicycle to make deliveries); Defts. 56.1 Stmt. ¶¶ 40-

41.  The parties dispute whether Defendants instructed Plaintiffs to purchase specifically electric

bicycles, versus standard bicycles.  Defts. 56.1 Stmt. ¶ 42.  The delivery workers purchased the bicycles with their own money, and Defendants did not reimburse them for the bicycles or for repairs to the bicycles.  Chen Dep. Tr. at 83:22-84:4; *see* Defts. 56.1 Stmt. ¶¶ 45-46.  For example, the delivery worker Plaintiffs regularly changed their bicycles' brakes, without reimbursement.  *See* Espinobarros Galvez Dep. Tr. at 15:5-16:5; Galvez Garcia Dep. Tr. at 20:18-21:17; Luna Reyes Dep. Tr. at 23:5-12; Hernandez Vicente Dep. Tr. at 25:19-26:12.  The parties dispute whether Defendants provided Plaintiffs with other gear, such as helmets and vests.  Defts. 56.1 Stmt. ¶ 49; *see* Chen Dep. Tr. at 83:12-21.[6]

### 5.  Chen's Prior Litigation

In addition to Ginza, Chen previously owned a restaurant called Ageha Japanese Fusion from 2012 to March 2020.  Defts. 56.1 Stmt. ¶ 54.  Both Chen and Ageha were twice sued by Ageha employees for violations of the FLSA and the NYLL.  *Id*. ¶ 55; Chen Dep. Tr. at 26:21-29:15; *see Ie v. Ageha Japanese Fusion, Inc.*, No. 15 Civ. 63 (JGK), 2018 WL 1635029 (S.D.N.Y. Apr. 2, 2018); *Perez-Luna v. Ageha Japanese Fusion, Inc.*, No. 16 Civ. 6040 (AT), 2018 WL 8996345 (S.D.N.Y. Aug. 11, 2018).  In both prior cases, the allegations included violations of the federal and New York minimum wage, overtime, and wage notice laws.  *See Ie*, No. 15 Civ. 63 (JGK), Dkt. 1 ¶¶ 1-3; *Perez-Luna*, 2018 WL 8996345, at *1.  The parties in this case agree that the *Ie* lawsuit settled, while the plaintiff in *Perez-Luna* won a judgment of $62,311.  Defts. 56.1 Stmt.

---

[6] Defendants urge the Court to disregard Plaintiffs' deposition testimony regarding the bicycles, arguing that Plaintiffs only produced one receipt, but Defendants provide no evidence contradicting the testimony.  *See* Defts. 56.1 Stmt. ¶¶ 44-48.  "Disagreement with . . . deposition testimony offered in support of summary judgment" unaccompanied by "some evidence of the contrary contention" does not raise a genuine dispute of fact.  *Aquavia v. Goggin*, 208 F. Supp. 2d 225, 228 n.2 (D. Conn. 2002).

¶ 56.[7]   After those lawsuits, Chen was advised to maintain employment records for the Ageha

restaurant, *id.* ¶ 58, and was aware of his obligations under the FLSA and the NYLL, *id.* ¶ 59; *see*

Chen Dep. Tr. at 111:5-13 (admitting to being aware of his obligations under the FLSA and the

NYLL "to pay[] [his] employees" and his "legal obligation to retain all records related to payment

of wages to [his] employees").   Moreover, Chen testified at his deposition that "[m]any years ago,"

he was investigated by the New York State Department of Labor, which resulted in an order that

he pay his employees more and reimburse them for wages owed.   Chen Dep. Tr. at 111:14-112:9;

*see also* Defts. 56.1 Stmt. ¶ 60 (admitting that "Ginza was investigated by the New York State

Department of Labor 'many years ago,' resulting in an order that Defendant Chen must 'pay more'

to his employees").

## B.  Procedural History

Plaintiffs sued Ginza, Chen, and Xiu Lan Huang ("Huang")[8] on September 13, 2019, and

the case was initially assigned to the Honorable Paul A. Engelmayer.  Dkt. 1.  Plaintiffs filed an

amended complaint on October 21, 2019.   Dkt. 20 ("Complaint").   The amended complaint

dropped claims by one plaintiff who had been included in the original complaint, Vicente Galindo.

*Compare id. with* Dkt. 1.

---

[7] The docket in *Ie* reflects that the case was dismissed by the Honorable John G. Koeltl following a settlement payment by the defendants to the plaintiff in the amount of $15,000.   *Ie*, No. 15 Civ. 63 (JGK), Dkts. 93, 97, 105.   The docket in *Perez-Luna* reflects that the Honorable Analisa Torres granted partial summary judgment in favor of the plaintiff on his NYLL minimum wage claim, his FLSA and NYLL overtime claims, and his NYLL spread-of-hours, wage notice, and paystub claims.   *Perez-Luna*, No. 16 Civ. 6040 (AT), Dkt. 56 at 14:9-18:9.   Then, following a December 2017 bench trial on the remaining claims, *id.*, Dkts. 69, 72, Judge Torres entered judgment in the amount of $62,311, as well as prejudgment interest and attorneys' fees and costs. *Id.*, Dkt. 77.

[8] Espinobarros Galvez testified that Huang was "Kevin," presumably the other owner that certain Plaintiffs mentioned in their depositions.   Espinobarros Galvez Dep. Tr. at 81:5-10.

The Complaint alleges the following wage-and-hour violations: failure to pay the minimum wage, in violation of both the FLSA and the NYLL; failure to pay overtime wages, in violation of both the FLSA and the NYLL; failure to reimburse Plaintiffs for required tools for their jobs, in violation of both the FLSA and the NYLL; failure to pay spread-of-hours wages, in violation of the NYLL; and failure to provide wage notices and statements, in violation of the NYLL. Complaint ¶¶ 73-120.  The Complaint also pleads a claim for unjust enrichment.  *Id.* ¶¶ 121-123.

On September 29, 2020, the case was reassigned to the undersigned.  The Court entered a joint stipulation to dismiss the claims against Huang on February 1, 2021.  Dkt. 60.  Plaintiffs then moved for summary judgment as to liability on all claims, except the unjust enrichment claim, on February 26, 2021, *see* Dkt. 61, Dkt. 62 ("Motion"); Sprotzer Declaration.  Defendants filed their opposition on March 20, 2021, *see* Dkt. 65 ("Opposition"); Wong Declaration, and Plaintiffs filed their reply brief on April 2, 2021, *see* Dkt. 68 ("Reply").

## II.  Legal Standards

A district court should grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  "An issue of fact is genuine if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party,'" and "[a] fact is material if it 'might affect the outcome of the suit under the governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party is entitled to judgment as a matter of law when "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The non-movant "may not rely on conclusory allegations or unsubstantiated speculation," and "must offer some

hard evidence showing that its version of the events is not wholly fanciful." *Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (quotation marks and citations omitted).  In deciding a motion for summary judgment, the Court "resolve[s] all ambiguities, and credit[s] all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Spinelli v. City of New York*, 579 F.3d 160, 166 (2d Cir. 2009) (quoting *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001)).

## III.  Analysis

There are a number of issues to be resolved in connection with Plaintiffs' motion: (1) the threshold questions of Defendants' potential liability, including whether Ginza's operations fell within the FLSA and whether Chen faces individual liability; (2) what evidence concerning Plaintiffs' hours worked and wages received may be considered for purposes of deciding summary judgment; (3) whether, based on the undisputed evidence, Plaintiffs are entitled to summary judgment on liability as to their minimum wage, overtime, spread-of-hours, tools-of-the-trade, wage notice, and wage statement claims; (4) whether, if Defendants face liability under the FLSA, a material dispute exists as to the willfulness of their unlawful conduct; and (5) whether Plaintiffs are entitled to liquidated damages for their wage-and-hour claims.  The Court addresses each in turn.

### A.  Defendants' Potential Liability

#### 1.  The Applicability of the FLSA

The FLSA's minimum wage and overtime provisions protect "employees who in any workweek . . . [are] employed in an enterprise engaged in commerce or in the production of goods for commerce."  29 U.S.C. §§ 206(a), 207(a).  A business qualifies as such an enterprise if it "has employees handling, selling, or otherwise working on goods or materials that have been moved in

or produced for commerce by any person" and has "annual gross volume of sales made or business done" of $500,000 or more.  *Id.* § 203(s)(1).  "'Commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  *Id.* § 203(b).

The parties have stipulated that Ginza had annual sales exceeding $500,000 during the relevant period for purposes of section 203(s)(1).  Dkt. 52 ¶ 1.  Yet, Defendants maintain that Plaintiffs have failed to show that Ginza engaged in interstate commerce.  *See* Opposition at 10-11.  But "[i]t is inconceivable that a restaurant with over $500,000 in annual sales did not use materials originating from out of state," and "no evidence in the record . . . suggests otherwise." *Lopez v. MNAF Pizzeria, Inc.*, No. 18 Civ. 6033 (ALC), 2021 WL 1164336, at *5 (S.D.N.Y. Mar. 25, 2021) (granting summary judgment to a FLSA plaintiff).  For example, various Plaintiffs testified in their depositions that, not surprisingly, the restaurant received deliveries of items including food, wine, and soda; that they peeled shrimp, cut oranges, prepared vegetables, and made soup and soy sauce; and that they cleaned the restaurant using janitorial products.  *See* Espinobarros Galvez Dep. Tr. at 46:25-47:7, 49:6-10; Galvez Garcia Dep. Tr. at 69:6-70:18; Luna Reyes Dep. Tr. at 50:7-24; Galvez Narvaez Dep. Tr. at 38:3-17.  Such materials "undoubtedly moved in interstate commerce to New York City," *Archie v. Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998) (Sotomayor, J.), and Defendants have offered no evidence to the contrary.  Ginza was thus an "enterprise engaged in commerce" for purposes of the FLSA.  29 U.S.C. §§ 206(a), 207(a).[9]

---

[9] Unlike the FLSA, "the NYLL does not have minimum amount of sales or nexus to interstate commerce requirements."  *Lopez*, 2021 WL 1164336, at *5 (citation omitted).

### 2. Chen's Individual Liability

The FLSA's definition of an "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee."  29 U.S.C. § 203(d).  "[T]o be an 'employer,' an individual defendant must possess control over a company's actual 'operations' in a manner that relates to a plaintiff's employment."  *Irizarry v. Catsimatidis*, 722 F.3d 99, 109 (2d Cir. 2013).  The Second Circuit uses a multi-factor "economic reality" test to determine whether an individual is an "employer."  *Id.* at 104-05.  The relevant considerations are "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records."  *Id.* at 105 (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 142 (2d Cir. 2008)).  "Courts have interpreted the definition of 'employer' under the [NYLL] coextensively with the definition used by the FLSA."  *Spicer v. Pier Sixty LLC.*, 269 F.R.D. 321, 335 n.13 (S.D.N.Y. 2010).

Defendants apparently concede that Chen was Plaintiffs' employer under the terms of the FLSA and the NYLL.  *See generally* Opposition (failing to address the argument).  They also admit to all relevant facts establishing that status.  They admit that Chen had authority to hire and fire Plaintiffs; supervised Plaintiffs, acted as their manager and boss, and set their schedules; determined Plaintiffs' wages and terms of employment; and maintained employment records for Plaintiffs.  *See* Defts. 56.1 Stmt. ¶¶ 5-13.  Accordingly, Chen, as well as Ginza, employed Plaintiffs for purposes of their FLSA and NYLL claims.

**B.  Calculations of Plaintiffs' Wages and Hours**

The Court next turns to another threshold matter: how to assess the evidence of the hours Plaintiffs worked and the wages they received for purposes of their summary judgment motion. Both the FLSA and the NYLL require the Court to use a burden-shifting approach to evaluate claims of unpaid wages where, like here, the defendants present scant records of the plaintiffs' employment and the plaintiffs rely on their own recollections.  *See Salinas v. Starjem Rest. Corp.*, 123 F. Supp. 3d 442, 471 n.31 (S.D.N.Y. 2015).

Under the FLSA, if "the employer's records are inaccurate or inadequate and the employee cannot offer convincing substitutes," the employee must "produce sufficient evidence to show the amount and extent of [that work] as a matter of just and reasonable inference."  *Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946)).  The employee's "own recollection" is sufficient to meet that burden.  *Id.* "The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence."  *Id.* (quoting *Anderson*, 328 U.S. at 687-88).

"New York law similarly provides that where an employer fails 'to keep adequate records . . . the employer in violation shall bear the burden of proving that the complaining worker was paid wages, benefits and wage supplements.'"  *Pest v. Bridal Works of N.Y., Inc.*, 268 F. Supp. 3d 413, 423 (E.D.N.Y. 2017) (quoting N.Y. Lab. Law §§ 196–a, 195(4)).  "[T]he NYLL—unlike the FLSA—does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid. . . .  An employer must demonstrate that it in fact paid its employees 'wages, benefits, and supplements.'"  *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017) (quoting N.Y. Lab. Law § 196-

a(a)).  And "if an employer cannot satisfy its burden under the FLSA, it cannot satisfy this more demanding burden of the NYLL."  *Id.* (quotation marks, citations, and alterations omitted).

Thus, the first question is whether Defendants kept adequate and accurate records of Plaintiffs' wages and hours.  The FLSA requires employers to "make, keep, and preserve" such records.  29 U.S.C. § 211(c).  Under applicable New York law and federal regulations, "[s]pecifically, employers must maintain records showing, *inter alia*, (1) total daily and weekly hours employees worked, (2) regular hourly rates of pay for each week in which overtime compensation is due, (3) total daily and weekly earnings, (4) total wages paid, (5) total weekly premium pay for overtime hours, and (6) dates of payment."  *Lanzetta v. Florio's Enters. Inc.*, 763 F. Supp. 2d 615, 618 n.1 (S.D.N.Y. 2011); *see also Gamero*, 272 F. Supp. 3d at 505 (faulting records that failed to "demonstrate[] the wages Plaintiffs earned *and* the hours they worked"); *Moon v. Joon Gab Kwon*, 248 F. Supp. 2d 201, 218-19 (S.D.N.Y. 2002) (explaining that a log book of hours came "nowhere close to satisfying the detailed recordkeeping requirements of the FLSA and its implementing regulations" and thus was inadequate).

Defendants have produced no records of Plaintiffs' wage rates, standard and overtime wages, wage notices, or wage payments.  As noted, Defendants contend that they kept some such records, but lost them, and that records were lost even after the onset of this litigation and the service of discovery demands for such documents.  The law requires employers to "preserve" their records, 29 U.S.C. § 211(c), and "unintentional . . . loss of records is not a defense to a recordkeeping violation."  *Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1246 (D. Or. 2014); *accord Hulger v. Legend of Asia, LLC*, No. 16 Civ. 549 (DGK), 2017 WL 2703577, at *5 (E.D. Mo. Jun. 22, 2017) ("[T]he Court is unable to find . . . any authority that grants an excuse to

the recordkeeping requirement for destroyed records."). Because Plaintiffs' records are inadequate, the Court applies the burden-shifting framework.

Under that framework, Plaintiffs need only provide sufficient evidence to show their wages and hours "as a matter of just and reasonable inference," such as based on their "own recollection[s]." *Kuebel*, 643 F.3d at 362 (quotation omitted). All Plaintiffs testified as to their wages and hours, meeting their burden of production. The various Plaintiffs testified that they worked between 61.5 and 74 hours per week, but were paid only between $525 and $1,000 biweekly, as summarized above.

The burden then shifts to Defendants to demonstrate Plaintiffs' precise wages and hours or to rebut the reasonableness of the inferences to be drawn from Plaintiffs' testimony. *See id.* To begin with Plaintiffs' wages, Defendants point to Chen's testimony that he paid Plaintiffs in accordance with the minimum wage laws posted on a wall at Ginza. *See* Opposition at 10. But such testimony—a bare claim that Defendants complied with the law—shows neither the precise wages Plaintiffs received nor rebuts the reasonableness of their recollections. "[A] party cannot create a triable issue of fact merely by stating in an affidavit the very proposition they are trying to prove," as "[c]onclusory allegations cannot by themselves create a genuine issue of material fact where none would otherwise exist." *Hicks v. Baines*, 593 F.3d 159, 167 (2d Cir. 2010) (quotation and alterations omitted); *accord Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 310 (2d Cir. 2008) (same, collecting cases). Defendants have thus failed to demonstrate a dispute of material fact as to the wages paid to Plaintiffs, and the Court accordingly credits for purposes of Plaintiffs' motion their sworn recollections as to the amounts they were paid.

The record with regard to Plaintiffs' hours, however, is less straightforward. Defendants did produce records purporting to reflect the hours Plaintiffs worked in the form of the Chen Time

Records.[10]  *See* Opposition at 9, 11.  While Defendants did not use punch cards or time cards, or any other manner of the employees themselves recording their hours worked, Chen Dep. Tr. at 73:11-15, Chen testified that he recorded the hours each employee actually worked daily, with the results reflected in the Chen Time Records, *id.* at 69:8-70:7.

The accuracy of these records is, of course, disputed.  Each Plaintiff testified at his deposition that he worked substantially longer hours than reflected in the Chen Time Records.  *See* Espinobarros Galvez Dep. Tr. at 42:17-43:21; Galvez Garcia Dep. Tr. at 42:5-43:8; Luna Reyes Dep. Tr. at 42:16-43:9, 60:17-19; Galvez Narvaez Dep. Tr. at 37:5-20, 62:8-12, 75:25-76:11; Hernandez Vicente Dep. Tr. at 45:7-18, 46:16-24, 49:13-15.  And there appears to be reason to question the accuracy of the Chen Time Records.  In particular, while Defendants claim that the Chen Time Records are "actual records, not just schedules," Opposition at 11, Chen also testified that if an employee started work earlier than the end of his scheduled break, Chen did not record the time unless he had requested the employee to work off-schedule, *see* Chen Dep. Tr. at 74:7-75:16.  Therefore, even if they were not contradicted by Plaintiffs' recollections, the Chen Time Records appear to sometimes underreport hours employees worked during scheduled breaks.  The

---

[10] "As a general matter . . . inadmissible hearsay . . . [is] an insufficient basis for opposing a motion for summary judgment." *Capobianco v. City of New York*, 422 F.3d 47, 55 (2d Cir. 2005).  "[W]hen offering business records in support of a motion for summary judgment, in order to avoid the bar against hearsay, the offering party should present an affidavit from a document custodian that explains whether the records were kept in the ordinary course of business.'" *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Mgmt., Inc.*, No. 04 Civ. 2293 (JFB) (SMG), 2007 WL 74304, at *3 (E.D.N.Y. Jan. 8, 2007) (quotation marks and alterations omitted).  Although Defendants have not presented such an affidavit supporting the Chen Time Records, it appears that Chen testified at his deposition that he created these records contemporaneously on the day that each employee worked.  *See* Chen Dep. Tr. at 69:8-70:7, 71:19-23.  In any event, Plaintiffs did not object to the Court's consideration of those records in deciding whether to grant summary judgment.  *See* Reply at 1-2.  Because of the lack of objection, and thus the lack of notice to Defendants of the need to supplement the records with a custodian declaration, the Court considers the Chen Time Records for purposes of deciding this motion.  *See Capobianco*, 422 F.3d at 55.

reliability of these records is also undermined as a matter of simple mathematics.  Scrutiny of the Chen Time Records reveals that the total number of hours listed for a week occasionally does not correspond to the sum of the daily hours recorded for that week.

Nevertheless, the Chen Time Records at least purport to constitute "evidence of the precise amount of work performed," that, if even close to accurate, diverges significantly from Plaintiffs' recollections.  *Kuebel*, 643 F.3d at 362 (quotation omitted).  Accordingly, solely for purposes of summary judgment, the Court uses the Chen Time Records as the floor for the hours that Plaintiffs worked.  Of course, at any trial on damages or other issues that survive summary judgment, Plaintiffs may challenge the reliability and accuracy of the Chen Time Records.

## C.  The Minimum Wage Claims

Having resolved these threshold issues, the Court turns next to the question of liability, beginning with Plaintiffs' claims that Defendants violated the FLSA and the NYLL by failing to pay them the minimum wage.  The Court first considers Defendants' contention that they were not required to pay the delivery worker Plaintiffs the full minimum wage because the delivery workers received tips and Defendants accordingly were entitled to a "tip credit."  Next, the Court considers whether the undisputed evidence supports a finding that Defendants failed to pay Plaintiffs the minimum wage.

### 1.  The "Tip Credit"

As noted, four of the Plaintiffs—Espinobarros Galvez, Galvez Garcia, Luna Reyes, and Hernandez Vicente—worked at Ginza as food delivery workers, Defts. 56.1 Stmt. ¶ 2, and thus received tips in connection with their jobs.  Defendants assert that they were not obligated to pay these delivery worker Plaintiffs the full standard minimum wage because Defendants were entitled to take a tip credit.  Opposition at 13-15.  Both the FLSA and the NYLL allow an employer to pay a food service employee who receives tips below the minimum wage, provided that the wage paid

plus the tips equals or exceeds the minimum wage.  *See* 29 U.S.C. § 203(m)(2); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3(b).  But under the FLSA and the NYLL, an employer is not entitled to such a tip credit unless certain conditions are met.  *See* 29 U.S.C. §§ 203(m), 206(a)(1); N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.3(b).  One of the conditions required by both federal and state law involves sufficient notice of the tip credit to the employee.

"Under the FLSA, an employer may not claim a tip credit as to an employee's wages unless the employer has informed that employee of the provisions of the section of the FLSA permitting the tip credit."  *Inclan v. N.Y. Hosp. Grp., In*c., 95 F. Supp. 3d 490, 497 (S.D.N.Y. 2015) (citing 29 U.S.C. § 203(m)).  The notice provision is "strictly construed" and "requires that an employer take affirmative steps to inform affected employees of the employer's intent to claim the tip credit."  *Id.*  "However, the FLSA's notice provision does not require that the notice be given in writing."  *Gamero*, 272 F. Supp. 3d at 501 (quotation and alteration omitted).  "The employer bears the burden of showing that it satisfied the . . . requirement."  *Inclan*, 95 F. Supp. 3d at 497 (quotation and alteration omitted).  "If the employer cannot show that it has informed employees that tips are being credited against their wages, then no tip credit can be taken and the employer is liable for the full minimum-wage."  *Id.*

The NYLL tip credit is also subject to a notice restriction.  *See Gamero*, 272 F. Supp. 3d at 501.  "But there is a critical distinction between the NYLL's notice provision and the FLSA's: Notice of the tip credit under the NYLL must be written."  *Id.* (quotation and alterations omitted).  That written notice must state the amount of tip credit taken from the hourly rate and advise that the employer will pay the employee additional wages if tips do not bring the employee up to the basic hourly rate.  *Id.* (citing N.Y. Comp. Codes R. & Regs. tit. § 146-2.2(a)).  "[T]his notice must be written in both English and 'any other language spoken by the new employee as his/her primary

language' . . . [and] once an employer has provided written notice of this tip credit, the employer must obtain 'acknowledgement of receipt signed by the employee,' . . . [to be] 'kept on file for six years.'" *Id.* (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 146–2.2(a)(1)-(2), (c)). "An employer who fails to provide the required notice is liable for the difference between the full minimum wage rate and what the employee was actually paid." *Id.* The NYLL's tip credit provisions also "impose a recordkeeping burden" as to wage payments, requiring employers taking a tip credit to "'establish, maintain, and preserve for at least six years'" weekly payroll records showing those tip credits. *Inclan*, 95 F. Supp. 3d at 498 (quoting N.Y. Comp. Codes R. and Regs. tit. 12 § 146–2.1(a)(9)).

Defendants are not entitled to take a tip credit under either the FLSA or the NYLL because the undisputed facts show that they did not provide the required notices.[11] To start, multiple Plaintiffs testified that Defendants did not provide them with notice, either oral or written, of the tip credit provisions. *See* Galvez Garcia Dep. Tr. at 41:18-21 (testifying that neither Chen nor "Kevin," nor anyone else at Ginza, discussed tips with him); Luna Reyes Dep. Tr. at 62:21-25 (testifying that tips were discussed to the extent that they were to be distributed among the delivery persons); Hernandez Vicente Dep. Tr. at 45:19-46:3 (testifying that he never had any discussion with "Kevin" about tips, but observed how they were paid). And even though Defendants bear the burden of proof on this issue, they have proffered no evidence showing that they informed Plaintiffs of their intent to take a tip credit. Instead, Defendants rely only on Chen's deposition

---

[11] Plaintiffs also argue that Defendants cannot take a tip credit because Plaintiffs spent more than two hours per day on non-tipped work. *See* Motion at 11-12. For instance, Espinobarros Galvez and Galvez Garcia both testified that they would regularly spend time cleaning the restaurant and preparing food. Espinobarros Galvez Dep. Tr. at 47:23-49:10; Galvez Garcia Dep. Tr. at 68:20-70:18. Because of the deficiency of the notices, the Court does not reach this alternative basis for denying Defendants an entitlement to a tip credit.

testimony.  *See* Defts. 56.1 Stmt. ¶¶ 35-36 (citing Chen Dep. Tr. at 75:11-77:24, 92:20-95:21, 96:9-13, 97:2-8); Opposition at 14 (citing Chen Dep. Tr. at 92:20-95:21, 114:12-115:7).   But that testimony does not speak to whether Chen informed Plaintiffs that Ginza would take a tip credit from their wages.  Chen testified that he explained Plaintiffs' salaries to them when hiring, then handwrote that salary on a piece of paper.  Chen Dep. Tr. at 92:20-94:23.  Chen did not, however, testify that he also described how tipping interacted with Plaintiffs' wages, nor have Defendants provided any evidence of such communications.  Employers must state the intent to take a tip credit *specifically*, and not just, for example, inform employees that they will receive wages augmented by tips.  *See Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 288 (S.D.N.Y. 2011) (collecting cases).[12]

Defendants also point to a minimum wage poster, which they claim was hung on a wall at the restaurant, as demonstrating the intent to take a tip credit.  *See* Opposition at 14 (citing Chen Dep. Tr. at 114:12-115:7).[13]  But Chen did not testify that the minimum wage poster contained any information regarding tips, *see* Chen Dep. Tr. at 114:12-115:7, and the only poster in evidence

---

[12] While the "Court is not required to consider what the parties fail[ed] to point out in their Rule 56.1 statements," *Holtz*, 258 F.3d at 73 (quotation omitted), the Court also has considered a portion of Chen's deposition that was not raised by Defendants.  Chen testified that when he hired delivery workers, he "told them if . . . they did not get more than $20.00 of tip[s]" on a day, he would pay them to raise their tips to that amount.  Chen Dep. Tr. at 101:15-24.  That statement, however, falls short of giving employees notice of an intent to take a tip credit, because it does not describe the tip credit's essence, *i.e.*, that the workers' wages would fall below the legally mandated minimum that would otherwise apply.  *See Copantitla*, 788 F. Supp. 2d at 287-88.

[13] Plaintiffs dispute whether a poster explaining wage was in fact hung, but for purposes of this motion, the Court will assume that it was.  *See* Espinobarros Galvez Dep. Tr. at 68:24-69:3; Galvez Garcia Dep. Tr. at 48:18-22; Luna Reyes Dep. Tr. at 67:22-25; Galvez Narvaez Dep. Tr. at 78:23-79:2; Hernandez Vicente Dep. Tr. at 56:15-21; *but see* Luna Reyes Dep. Tr. at 68:2-18 (testifying that "something that talked about minimm wage and overtime" was in a basement storage room); Hernandez Vicente Dep. Tr. at 56:9-57:17 (testifying that there was "some kind of poster that indicated the minimum wage," not on a wall but rather kept on a table near the cash register).

is generic, stating that some employers may permissibly take tip credits, but not that Defendants were doing so, *see* Wong Declaration, Exh. D.  Courts in the Second Circuit have found such notice to be insufficient.  *See Copantitla*, 788 F. Supp. 2d at 289 ("A generic government poster could inform employees that minimum wage obligations exist, but could not possibly inform employees that their employers intend to take the tip credit with respect to their salary."); *Hernandez v. JRPAC Inc.*, No. 14 Civ. 4176 (PAE), 2016 WL 3248493, at *24-25 (S.D.N.Y. June 9, 2016); *Salinas*, 123 F. Supp. 3d at 467; *Perez v. G&P Auto Wash, Inc.*, 930 F. Supp. 2d 423, 435-36 (E.D.N.Y. 2013).

Finally, because Defendants fall short of showing any material issue as to their eligibility for a tip credit under the FLSA, they necessarily do not meet the more stringent requirements under New York law.  Defendants have presented no evidence to suggest that they provided written notices of the tip credit (or that such notices were written in Plaintiffs' apparent primary language of Spanish),[14] obtained signed acknowledgments of the tip credit from Plaintiffs, maintained records of such notices for six years, or maintained payroll records demonstrating tip credits for six years.

Thus, based on the undisputed evidence, Defendants are not entitled to tip credit under either the FLSA or the NYLL when calculating whether the wages they paid the delivery worker Plaintiffs satisfied the minimum wage.

## 2.  Defendants' Failure to Pay the Minimum Wage

---

[14] Chen testified that, when necessary, he used Spanish speakers to communicate with Plaintiffs.  Chen Dep. Tr. at 92:20-93:4, 93:16-22; *see* Defts. 56.1 Stmt. ¶ 21 ("Chen would explain to employees the rate of pay when he hired them, he would get a Spanish speaking person to help him.").

The FLSA and the NYLL require employers to pay their employees a minimum wage equal to or greater than the statutorily required amount.  *See* 29 U.S.C. § 206; N.Y. Lab. Law § 652.  The federal minimum wage throughout Plaintiffs' employment was $7.25 per hour.  *See* 29 U.S.C. § 206(a)(1)(c).  The minimum wage in New York during Plaintiffs' employment was as follows: $7.15 per hour through 2013; $8.00 per hour in 2014; $8.75 per hour in 2015; $9.00 per hour in 2016; $10.50 per hour in 2017; $12.00 per hour in 2018; $13.50 per hour in 2019; and $15.00 per hour from 2020 to the present.  N.Y. Lab. Law § 652(a).[15]  Thus, the federal rate was higher until 2014, since which time the New York rate has been higher.  *See* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter . . . .").

As discussed above, for purposes of Plaintiffs' summary judgment motion, the Court credits Plaintiffs' deposition testimony as to the wages they were paid, as Defendants have failed to rebut the reasonableness of Plaintiffs' recollections, and uses the Chen Time Records as the floor for the hours worked.  While Plaintiffs insist that they worked more hours than memorialized in the Chen Time Records, there is no dispute that they worked at least the hours reflected in those records.  But even considering the lower hours worked contained in the Chen Time Records, Defendants still failed to pay Plaintiffs the minimum wage.  The Court considers each Plaintiff in turn.

---

[15] From 2016 onward, the NYLL mandated differing minimum wages for small employers, which employ ten or fewer employees, and large employers, which employ eleven or more employees.  *See* N.Y. Lab. Law § 652(a).  For purposes of summary judgment on liability only, the Court assumes that Ginza is a small employer, subjecting it to a lower minimum wage.

Espinobarros Galvez testified at his deposition that, from September 21, 2014 to early January 2018, he was paid $600 biweekly, and that he never received any additional payments. Espinobarros Galvez Dep. Tr. at 37:7-38:9, 46:3-16, 69:4-7.  The Chen Time Records, which refer to Espinobarros Galvez as "Michael," *see* Opposition at 5, reflect that during this time, he worked from 30:15 to 47:30 hours per week, and that for most of those weeks he worked slightly over forty-three hours.  Chen Time Records at 129-168.  Assuming a typical workweek of forty-three hours, Defendants paid Espinobarros Galvez $6.98 per hour, which is below the applicable minimum wage at any time.

Galvez Garcia testified that from, January 2015 to March 2017, he was paid $600 biweekly, and that he also never received a bonus or additional pay.  Galvez Garcia Dep. Tr. at 33:24-34:4, 41:8-24, 43:9-12, 49:4-8.  The Chen Time Records, which refer to Galvez Garcia as "Tony," *see* Opposition at 5, show that, during this time, Galvez Garcia worked from 35:00 to 46:30 hours per week (with the exception of his first week when he worked twenty-one hours), and typically over forty-two hours per week.  Chen Time Records at 169-195.  Assuming a typical workweek of forty-two hours, Defendants paid Galvez Garcia $7.14 per hour, under the applicable minimum wage at any time.

Luna Reyes testified that, from October 15, 2015 to around June 2019, he was paid $525 biweekly, Luna Reyes Dep. Tr. at 39:8-17, 59:2-6, and then from, approximately June 2019 to March 15, 2020, he received a daily salary of $60, *id.* at 60:20-24.  The Chen Time Records, which refer to Luna Reyes as "Artemio," *see* Opposition at 6, show that, from October 15, 2015 to June 2019, Luna Reyes worked from 32:30 to 48:15 hours per week, typically slightly over forty hours per week.  Chen Time Records at 30-74.  And those records reflect that, from June 2019 to March 15, 2020, Luna Reyes worked from 32:00 to 43:45 hours per week, again often working slightly

over forty hours per week.  *Id.* 22-30.  Until the wage increase around June 2019, and assuming a typical workweek of forty hours, Defendants paid Luna Reyes $6.56 per hour, below the applicable minimum wage at any time.  And after the wage change, again assuming a forty-hour workweek, Defendants paid Luna Reyes $9 per hour, also under the minimum wage at the time.

Galvez Narvaez testified that, from January 2010 to September 2012 and from February 2013 to early 2018, he was paid $800 biweekly, and then from early 2018 to May 2018, he was paid $1,000 biweekly.  Galvez Narvaez Dep. Tr. at 29:4-31:10, 49:14-50:8, 75:16-18.  The Chen Time Records, which refer to Galvez Narvaez as "Jose," *see* Opposition at 6, show that, between January 2014 and early 2018,[16] Galvez Narvaez worked from 39:45 to 48:40 hours per week (with an outlier of one week in April 2017 when he worked only sixteen hours), usually working approximately forty-seven or forty-eight hours per week.  Chen Time Records at 80-128.  Those records further reflect that, from early 2018 through June 2018, Galvez Narvaez worked from 40:00 to 48:30 hours per week, again normally working approximately forty-seven or forty-eight hours per week.  *Id.* at 75-80.  Assuming a typical workweek of forty-seven hours, Defendants paid Galvez Narvaez $8.51 per hour from January 2014 to January 2018, and paid him $10.64 per hour from January to June 2018, both of which figures are below the minimum wages for those years.

Lastly, Hernandez Vicente testified that, from December 15, 2017 to around March 2019, he was paid $550 biweekly, and then from around March 2019 to August 31, 2019, he was paid

---

[16] The Chen Time Records do not reflect hours for Galvez Narvaez from January 2010 to December 2013, a period when Galvez Narvaez testified that he also worked at Ginza.  Galvez Narvaez Dep. Tr. at 29:4-31:10.  Galvez Narvaez testified that he worked approximately seventy-two hours per week while at Ginza.  *Id.* at 37:5-20, 62:6-16, 75:5-11.  Assuming a typical workweek of seventy-two hours, Defendants paid Galvez Narvaez $5.56 per hour for the period of January 2010 through December 2013, below the minimum wage at any time.

$600 biweekly.  Hernandez Vicente Dep. Tr. at 36:11-17, 44:8-18, 49:16-25.  The Chen Time Records, which refer to Hernandez Vicente as "Alex," *see* Opposition at 6, show that, from December 15, 2017 to March 2019, Hernandez Vicente worked from 31:05 to 49:15 hours per week (aside from his first week, when he worked 17:50 hours), usually approximately forty-three or forty-four hours per week.  Chen Time Records at 6-21.  And those records further reflect that from March 2019 to August 31, 2019, Hernandez Vicente worked 27:00 to 44:05 hours per week, usually between thirty-five and forty-three hours per week.  *Id.* at 1-6.  For the period of December 15, 2017 to March 2019, assuming a typical workweek of forty-three hours, Defendants paid Hernandez Vicente $6.40 per hour, which is under the applicable minimum wage at any time.  And for the second period of March 2019 to August 31, 2019, even assuming a typical workweek at the low end of thirty-five hours, Defendants paid Hernandez Vicente $8.57, also below the applicable minimum wage for that year.

Thus, Defendants regularly paid all five Plaintiffs below the standard minimum wage, even using the lower hours reflected in the Chen Time Records.  Fully ascertaining damages due to Plaintiffs will, of course, require more precise calculations, and the consideration of the reliability of the Chen Time Records and Plaintiffs' testimony.[17]  That credibility dispute must be resolved at trial.  Therefore, the Court grants Plaintiffs summary judgment on liability as to their minimum wage claims under the FLSA and the NYLL.

**D.  The Overtime Claims**

---

[17] As noted earlier, some of the Chen Time Records contain significant mathematical mistakes.  For example, for the week of December 3, 2018, the Records' weekly total states that Luna Reyes worked 30:45 hours, but the beginning and end times indicate that he worked 40:30 hours.  *See* Chen Time Records at 36.  The maximum and minimum weekly hours referenced previously assume that the beginning and end times, rather than the totals, are correct where the two conflict.

The FLSA and the NYLL both require employers to pay employees a rate of one and one-half times their regular hourly wages for each hour worked over forty in a workweek. 29 U.S.C. § 207(a)(1); N.Y. Comp. Codes R. & Regs., tit. 12 § 142-2.2. As indicated above, even using the Chen Time Records, there is no dispute that each of the Plaintiffs routinely worked more than forty hours per week. The Chen Time Records reflect that Espinobarros Galvez worked over forty hours in nearly 150 weeks between September 28, 2014 and December 10, 2017, Chen Time Records at 129-168, Galvez Garcia worked over forty hours in more than 100 weeks between January 8, 2015 and March 17, 2017, *id.* at 169-195, Luna Reyes worked over forty hours in approximately 200 weeks between October 19, 2015 and February 29, 2020, *id.* at 22-74, Galvez Narvaez worked over forty hours in more than 220 weeks between January 20, 2014 and June 9, 2018, *id.* at 75-128, and Hernandez Vicente worked over forty hours in more than sixty weeks between December 15, 2017 and August 31, 2019, *id.* at 1-21. And for each Plaintiff, many of these weeks occurred within even the shorter two-year statute of limitations for non-willful FLSA violations. When Plaintiffs worked more than forty hours, Defendants were obligated to pay them overtime under federal and state law.

Yet, Plaintiffs testified that they were not paid overtime for those weeks. Each Plaintiff testified that he never received any bonus or additional salary apart from his base salary. *See* Espinobarros Galvez Dep. Tr. at 69:4-7; Galvez Garcia Dep. Tr. at 49:4-8; Luna Reyes Dep. Tr. at 63:11-16; Galvez Narvaez Dep. Tr. at 76:5-9; Hernandez Vicente Dep. Tr. at 58:3-6. And Defendants have offered no records of the wages paid to Plaintiffs in general, let alone any documentary proof of overtime payments. *See* Opposition at 15-16. While Chen testified that "if [an employee] worked more than [forty hours], I would pay him overtime," Chen Dep. Tr. at 115:5-7, this is insufficient. Under the applicable burden-shifting framework discussed above,

Defendants must provide evidence demonstrating Plaintiffs' exact wages or indicting the reasonableness of inferences drawn from their testimony, and Defendants have done neither. *See Kuebel*, 643 F.3d at 362. And again, merely conclusory statements of compliance with the law cannot ward off summary judgment in the face of Plaintiffs' evidence of a failure to pay overtime. *See Hicks*, 593 F.3d at 167.

Thus, Plaintiffs are entitled to summary judgment on liability on their overtime claims under the FLSA and the NYLL. Given the considerable disagreement among the parties as to the amount of underpaid overtime, any damages in this regard also must be resolved at trial.

## E. The Spread-of-Hours Claims

Under the regulations implementing the NYLL, restaurant employees are entitled to "one additional hour of pay at the basic minimum hourly rate" for "each day on which the spread of hours exceeds 10." N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a); *see Rana v. Islam*, 887 F.3d 118, 123 n.3 (2d Cir. 2018) ("New York . . . awards 'spread of hours pay' in addition to minimum and overtime wages . . . ."). The "spread of hours" is defined as "the length of the interval between the beginning and end of an employee's workday," including "working time plus time off for meals plus intervals off duty." N.Y. Comp. Code. R. & Regs. tit. 12 § 146-1.6. For example, if an employee works from 7:00 a.m. to 10:00 a.m., then from 7:00 p.m. to 10:00 p.m., the employee's spread of hours is fifteen, despite only working six. *See id.*

Once again, crediting Defendants' own evidence, they are liable for failure to render spread-of-hours pay to Plaintiffs. To start, the Chen Time Records showed that all five Plaintiffs regularly worked with intervals in excess of ten hours between the start and end of their workdays. *See, e.g.,* Chen Time Records at 2 (Hernandez Vicente recorded as working a spread from 12:00 p.m. to 10:50 p.m.); *id.* at 45 (Luna Reyes recorded as working a spread from 10:30 a.m. to

9:10 p.m.); *id*. at 78 (Galvez Narvaez recorded as working a spread from 12:00 p.m. to 11:00 p.m.); *id*. at 130 (Espinobarros Galvez recorded as working a spread from 12:00 p.m. to 11:00 p.m.); *id*. at 170 (Galvez Garcia recorded as working a spread from 12:00 p.m. to 11:00 p.m.).[18]  Defendants point to no evidence suggesting that Plaintiffs were not entitled to the additional hour of pay on those days when their spread of work hours exceeded ten.  *See* Defts. 56.1 Stmt. ¶ 24.  And, based on Defendants' own records, the Court agrees with Plaintiffs that they were.

The undisputed material facts also show that Defendants nevertheless failed to comply with the NYLL by failing to pay Plaintiffs for an additional hour at the minimum wage those days.  As noted above, Plaintiffs testified that they were not paid additional wages when they worked more than ten hours: each testified to never receiving any bonus or additional salary apart from their base salary.  *See* Espinobarros Galvez Dep. Tr. at 69:4-7; Galvez Garcia Dep. Tr. at 49:4-8; Luna Reyes Dep. Tr. at 63:11-16; Galvez Narvaez Dep. Tr. at 76:5-9; Hernandez Vicente Dep. Tr. at 58:3-6.  Defendants point to no evidence suggesting otherwise.[19]  The Court therefore grants summary judgment on liability as to Plaintiffs' spread-of-hours claims under the NYLL.  And here

---

[18] The Chen Time Records reflect that each Plaintiff had multi-hour breaks during the workday.  Such breaks, however, are not relevant to determining entitlement to spread-of-hours compensation.  *See Leon Neri v. Abi Japanese Rest., Inc.*, No. 20 Civ. 581 (MKB), 2021 WL 6804252, at *9 (E.D.N.Y. Nov. 29, 2021) (rejecting the defendants' argument that their employees worked under ten hours when breaks were excluded, because "the spread of hours requirement applies regardless of break time").

[19] Defendants' Rule 56.1 statement failed to raise potentially relevant testimony here as well.  When Chen was asked at his deposition whether he complied with spread-of-hours requirements, he answered in the affirmative, and explained that spread-of-hours regulations required him to pay workers who work over ten hours for one additional hour.  Chen Dep. Tr. at 98:12-99:7.  But that testimony neither establishes Plaintiffs' exact hours nor indicts the reasonableness of the inferences to be drawn from their testimony.  *See Kuebel*, 643 F.3d at 362.  "[R]eliance upon conclusory statements . . . [cannot] defeat a summary judgment motion."  *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008) (quoting *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002)).

too, given the dispute as to the hours truly worked, damages for Defendants' failure to render

spread-of-hours pay must be resolved at trial.

**F.  The Tools-of-the-Trade Claims**

Under the regulations implementing both the FLSA and the NYLL, "an employer may not shift the cost of purchasing 'tools of the trade' to an employee if the cost of such tools cuts into the minimum or overtime wages required to be paid him." *Gamero*, 272 F. Supp. 3d at 511 (quotation omitted); *see* 29 C.F.R. § 531.35; N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.7(c). "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." *Guan Ming Lin v. Benihana Nat'l Corp.*, 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010).

Ginza exclusively employed delivery workers who had bicycles, and required such employees to purchase their own bicycles to make the food deliveries.  Chen himself acknowledged as much at his deposition.  When asked whether Ginza ever hired a delivery worker who did not have a bicycle, Chen replied: "They all have a bike.  And if they don't have a bike, they don't come here to work as a delivery person."  Chen Dep. Tr. at 82:9-11; *see* Galvez Garcia Dep. Tr. at 65:22-66:3 (testifying that he was required to have a bicycle to make deliveries).  The bicycles thus constituted tools of the trade for purposes of the FLSA and the NYLL.  *See Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240, 257-58 (S.D.N.Y. 2008) (holding that a restaurant's delivery workers' bicycles were tools of the trade).  Chen further acknowledged that the delivery workers were responsible for purchasing their own bicycles, as well as for paying for upkeep on their bicycles, such as for tires, lights, and locks.  Chen Dep. Tr. at 83:22-84:6, 84:25-85:10.  The delivery worker Plaintiffs similarly testified that they paid for their bicycles, as well as for maintenance and repairs.  *See* Espinobarros Galvez Dep. Tr. at 11:7-12:6, 15:5-16:5; Galvez Garcia Dep. Tr. at 12:9-13:5, 15:22-16:8, 20:18-21:17, 67:7-68:19, 75:15-21, 78:17-79:7; Luna Reyes Dep. Tr. at 19:13-20:16, 21:14-22:11, 23:3-12, 25:2-26:16, 26:25-28:21; Hernandez

Vicente Dep. Tr. at 24:5-23, 29:15-26:12, 71:16-72:16, 86:21-87:15, 90:7-20.  Since Defendants also failed to pay Plaintiffs the required wages, the costs of the bicycles and their maintenance "cut[] into the minimum or overtime wages" these delivery worker Plaintiffs were owed, further violating federal and New York law.  *Gamero*, 272 F. Supp. 3d at 511 (quotation omitted).

Defendants' arguments to the contrary lack merit.  First, they argue that Plaintiffs provided only one receipt for a battery replacement for a bicycle.  Opposition at 17; *see* Hernandez Vicente Dep. Tr. at 71:10-72:16.  But as noted above, Defendants do not provide any evidence to contest Plaintiffs' testimony on the point.  Nor is there a requirement that a plaintiff provide documentation to support a tools-of-the-trade claim.  *See Almanzar v. 1342 St. Nicholas Ave. Rest. Corp.*, No. 14 Civ. 7850 (VEC) (DF), 2016 WL 8650464, at *15 (S.D.N.Y. Nov. 7, 2016), *report and recommendation adopted*, 2017 WL 1194682 (S.D.N.Y. Mar. 30, 2017).  Second, Defendants argue that Plaintiffs never requested reimbursement.  Opposition at 17; *see* Chen Dep. Tr. at 85:11-14 (acknowledging that he never reimbursed workers for bicycle repairs, but maintaining that nobody ever asked him to do so).  Even putting aside that two Plaintiffs disputed that contention during their depositions, *see* Galvez Garcia Dep. Tr. at 78:17-79:7; Luna Reyes Dep. Tr. at 21:14-22:11, 23:3-4, it would not be a defense.  The applicable regulations put the burden on the employer to reimburse employees for required tools that they purchase, not on the employee to request reimbursement.  *See* 29 C.F.R. § 531.35; N.Y. Comp. Codes R. & Regs. tit. 12 § 146-2.7(c).  The Court therefore grants summary judgment as to liability in favor of the delivery worker Plaintiffs' FLSA and NYLL tools-of-the-trade claims, with respect to the purchase of and the maintenance to their bicycles, with damages relating to those claims to be determined at trial.

The Court, however, denies summary judgment as to the accessories for Plaintiffs' bicycles because a genuine dispute exists as to whether Defendants provided such equipment to Plaintiffs.

Chen testified at his deposition that he provided his delivery workers with helmets and vests, although they sometimes chose to use their own.  Chen Dep. Tr. at 83:12-21.  He also testified that the restaurant paid for the bicycle baskets used to carry the food.  *Id.* at 84:15-21.  Certain Plaintiffs testified otherwise, contending that they had to purchase their own gear, including helmets and vests.  *See* Galvez Garcia Dep. Tr. at 67:7-68:19; Hernandez Vicente Dep. Tr. at 90:7-16.  No receipts have been provided for any of these items.  *See* Galvez Garcia Dep. Tr. at 75:15-21; Chen Dep. Tr. at 84:7-10.  Therefore, the Court concludes that material disputes of fact remain as to Plaintiffs' FLSA and NYLL tools-of-the-trade claims pertaining to bicycle gear to include helmets, vests, and baskets.

## G.  The Lack of Written Wage Notices and Wage Statements Claims

The Wage Theft Prevention Act, as codified in the NYLL, requires employers to provide employees with a written wage notice at hiring and wage statements with each wage payment.  N.Y. Lab. Law § 195(1), (3).  The wage notice at hiring must be written in English and the employee's primary language and must include the employee's rate of pay, pay period and date, any allowances taken from the wages, and the employer's contact information.  *See Zhang v. Great Sichuan on 3rd Ave., Inc.*, 334 F. Supp. 3d 621, 622 (S.D.N.Y. 2018) (citing N.Y. Lab. Law § 195(1)(a)).  The employer must obtain a signed acknowledgment of the wage notice from the employee and preserve that written acknowledgment for six years.  N.Y. Lab. Law § 195(1)(a).

"In addition to the wage notice requirement, employers are also required to provide employees with a wage statement with each payment of wages.  Each wage statement must list, *inter alia*, the dates of work covered by that payment of wages, the employer's address and phone number, the applicable rate or rates of pay, applicable deductions, and any allowances claimed as part of the minimum wage."  *Java v. El Aguila Bar Rest. Corp.*, No. 16 Civ. 6691 (JLC), 2018 WL

1953186, at *12 (S.D.N.Y. Apr. 25, 2018) (citing N.Y. Lab. Law § 195(3)) (quotation and alterations omitted).

No Plaintiff testified that Defendants provided written wage information at hiring; at most, Plaintiffs learned of their wages orally.   *See* Espinobarros Galvez Dep. Tr. at 40:14-42:12 (testifying that when he started at Ginza, "Kevin" did not tell him his salary, but he knew from a friend working at Ginza that it would be $300 per week); Galvez Garcia Dep. Tr. at 41:8-17 (testifying that he was not told his salary before his first payment); Luna Reyes Dep. Tr. at 42:16-43:13 (testifying that when he was hired, Chen told him that he would work six days a week from 10:30 a.m. to 9:30 p.m., but not his wages); Galvez Narvaez Dep. Tr. at 37:5-38:17, 62:8-12 (testifying that when he started, "Kevin" told him his hours and duties); Hernandez Vicente Dep. Tr. at 42:9-43:9, 43:24-45:18 (testifying that, when he started, co-workers told him the amount he would be paid, that about a week later "Kevin" told him his salary, and that "Kevin" told him his hours but he was never provided a written schedule).

Chen, however, contended that he did provide some form of wage notice to Plaintiffs at the time of hiring.  Chen testified at his deposition that, while he did not use formal contracts when hiring, he orally explained Plaintiffs' hours, schedules, and wages with the assistance of a Spanish speaker, and handwrote that information on a piece of paper.  Chen Dep. Tr. at 92:20-93:15.  But even crediting that testimony, Chen did not comply with the requirements of the NYLL.  Chen testified that the handwritten documents contained rates of pay and schedules, but not that the notices were written in Plaintiffs' primary languages or included much of the required information, including, for example, allowances deducted from wages and dates of payments.  *Id.*  Nor have Defendants pointed to any evidence suggesting this occurred.  Moreover, while the law requires employers to obtain and retain signed acknowledgments, *see* N.Y. Lab. Law § 195(1)(a), Chen

testified that he gave the documents to his employees and retained no records, Chen Dep. Tr. at 93:23-25. Thus, there is no material dispute that Defendants failed to comply with section 195(a)(1)'s requirements regarding wage notices at hiring. *See Zhang*, 334 F. Supp. 3d at 623 (explaining that the plaintiffs were entitled to summary judgment when the defendants failed to show that their wage notices included all information required by the NYLL).

Plaintiffs also testified that that Chen failed to provide them with written wage information when they received their wages. Each Plaintiff testified that Chen or "Kevin" paid them with envelopes containing cash, and that the envelopes bore some words in a foreign language, possibly their names in Chinese, but had no other information. *See* Espinobarros Galvez Dep. Tr. at 78:15-79:8; Galvez Garcia Dep. Tr. at 56:6-20; Luna Reyes Dep. Tr. at 59:10-60:12; Galvez Narvaez Dep. Tr. at 84:22-85:23; Hernandez Vicente Dep. Tr. at 54:17-55:17. While Chen testified that he handwrote Plaintiffs' wages and hours on the envelopes, Chen Dep. Tr. at 78:7-11, 96:9-13, that would not suffice for compliance with the NYLL. The NYLL requires that the wage statements include, for example, the allowances and deductions taken from employees' wages. Defendants provide no evidence to rebut Plaintiffs' testimony that the envelopes included no such information. *See* Defts. 56.1 Stmt. ¶ 51. Thus, the undisputed material facts show that any notices provided to Plaintiffs with their regular wage payments also were insufficient under the NYLL.

As to both issues, Defendants raise the statutory "affirmative defense that . . . the employer made complete and timely payment of all wages due" pursuant to the NYLL. N.Y. Lab. Law §§ 198(1-b), (1-d); *see* Opposition at 18. For reasons addressed previously, Defendants failed to comply with the NYLL's wage requirements, so Defendants cannot benefit from the defense.

### H.  Willfulness

The standard statute of limitations for a FLSA action for "unpaid minimum wages, unpaid overtime compensation, or liquidated damages" is two years.  29 U.S.C. § 255(a).[20]  But if an employee proves that the employer's violations were willful, the statute of limitations is extended to three years.  *Id.*; *see Young v. Cooper Cameron Corp.*, 586 F.3d 201, 207 (2d Cir. 2009). Willfulness for purposes of the FLSA is "'kn[owledge] or . . . reckless disregard for . . . whether [the employer's] conduct was prohibited by' the Act."  *Id.* (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).  "The burden is on the employee to show willfulness."  *Id.* "Although willfulness can sometimes be determined at the summary judgment stage, the standard for proving willfulness is high."  *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 937 (S.D.N.Y. 2013).

Plaintiffs have brought three sets of causes of action under the FLSA:  failure to pay minimum wage, Complaint ¶¶ 73-80, failure to pay overtime, *id.* ¶¶ 80-86, and requiring employees to purchase tools of their trade, further reducing their wages, *id.* ¶¶ 100-106.  The Court considers the issue of willfulness separately with respect to each of these causes of action.  *See* 29 U.S.C. § 255(a) (explaining that the statute of limitations depends on the accrual of "the cause of action").

The Court finds, on the undisputed facts, that Defendants acted with subjective reckless disregard for the FLSA's minimum wage and overtime requirements.  First, Chen was aware of his obligations under the FLSA and the NYLL, including his obligations to keep adequate records and comply with the minimum wage and overtime laws.  For instance, at his deposition, Chen testified that after the prior wage-and-hour lawsuits involving Ageha in 2015 and 2016, he was

---

[20] The statute of limitations under the NYLL is six years.  N.Y. Lab. Law § 663(3).

advised of the need to maintain all his employment records.  Chen Dep. Tr. at 76:8-17.  And he further testified that he understood that he was obligated to provide employees with notice of their pay rate, overtime rate, date of hire, employer name, and other information, and to retain any records of wage rates paid to his employees.  *Id.* at 97:2-14.  He also understood his obligations to pay overtime, at a rate of 1.5 times the typical rate, when employees worked more than forty hours per week, as well as his obligation to pay an additional hour as spread-of-hours pay when employees worked more than ten hours in a day.  *Id.* at 97:12-99:2; *see also id.* at 111:5-13 (Chen testifying that he was familiar with his obligations under the FLSA and the NYLL with respect to payment of employees and his retention of employment records).

Moreover, Chen was a named defendant in two prior lawsuits that alleged violations of the federal minimum wage and overtime laws, and those lawsuits culminated in a settlement and a judicial finding of liability, further demonstrating his knowledge of the federal wage-and-hour laws.  *See Ie*, No. 15 Civ. 63 (JGK), Dkt. 1 ¶¶ 1-3; *Perez-Luna*, 2018 WL 8996345, at *1.  On top of that, Ginza were the subject of a separate wage-and-hour investigation by the New York State Department of Labor.  *See* Defts. 56.1 Stmt. ¶ 60.  At his November 4, 2020 deposition, Chen testified that this investigation occurred "[m]any years ago," and the result was that he was told that he "needed to pay more to [his] employee[s]" and was ordered to do so.  Chen Dep. Tr. at 111:14-112:9.

In the face of these facts, Chen's continued failure to pay his employees the minimum wage and overtime reveals a reckless disregard for the requirements of the FLSA and rise to the level of willfulness.  *See Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1062 (2d Cir. 1988) (explaining that a defendant acted willfully because it "was on actual notice of the requirements of the FLSA by virtue of its earlier violations" and instructions to modify practices from administrative

investigators); *see also Eschmann v. White Plains Crane Serv., Inc.*, No. 11 Civ. 5881 (KAM) (VVP), 2014 WL 1224247, at *5 (E.D.N.Y. Mar. 24, 2014) (collecting cases showing that while summary judgment is often not appropriate with respect to willfulness, courts grant it when "there exist[s] no genuine dispute that the employer had been on notice" of the FLSA).

However, Plaintiffs have not presented sufficient evidence to allow a finding of willfulness at the summary judgment stage with respect to their FLSA tools-of-the-trade claim.  Neither prior lawsuit concerned such a claim.  *See Ie*, No. 15 Civ. 63 (JGK), Dkt. 1 ¶¶ 1-3; *Perez-Luna*, 2018 WL 8996345, at *1.  And while Chen said at his deposition that he was aware of his wage-and-hour obligations under the FLSA, he was not asked about, and did not testify to, his awareness of his obligation to reimburse workers for their purchases of items for their jobs.  *See* Chen Dep. Tr. at 76:8-78:11, 82:4-85:13, 111:5-112:9.  The Court thus declines to grant summary judgment to Plaintiffs on the question of whether Defendants willfully violated the FLSA provisions related to the tools of their trade.  That question, alone of the willfulness inquiries, remains open for trial.

## I. Liquidated Damages

"Under the FLSA, a district court is generally required to award a plaintiff liquidated damages equal in amount to actual damages."  *Barfield*, 537 F.3d at 150 (citing 29 U.S.C. § 216(b)).  The FLSA nevertheless gives courts discretion to deny liquidated damages if the employer shows that its violations were "in good faith" and that it "had reasonable grounds for believing" its acts were not violations of the Act.  29 U.S.C. § 260.  The first requirement is subjective, while the second is objective.  *See Barfield*, 537 F.3d at 150.  "To establish good faith, the employer must take active steps to ascertain the dictates of the FLSA and then act to comply with them."  *Herman v. RSR Sec. Servs. Ltd.*, 172 F.3d 132, 142 (2d Cir. 1999).  "[T]he employer's

burden is a difficult one," and "double damages are the norm and single damages the exception." *Barfield*, 537 F.3d at 150 (quotation and alterations omitted).

The NYLL also allows for liquidated damages in the same amount, with an exception for good faith, so there are "no meaningful differences" between liquidated damages under the FLSA and the NYLL. *Rana*, 887 F.3d at 123 (citing N.Y. Lab. Law § 198). The statutes, however, do "not allow[] duplicative liquidated damages for the same course of conduct." *Id.* Under both the state and federal laws, the Court, rather than the jury, decides whether to award liquidated damages. *See, e.g., Sun v. China 1221 Inc.*, No. 12 Civ. 7135 (RJS), 2016 WL 1587242, at *3-4 (S.D.N.Y. Apr. 19, 2016). "Liquidated damages are not available for violations of the NYLL wage notice and statement provisions." *Ying Yang Dai v. ABNS NY Inc.*, 490 F. Supp. 3d 645, 661 (E.D.N.Y. 2020) (quotation omitted).

The undisputed material facts demonstrate that Plaintiffs are entitled to liquidated damages as to the minimum wage, overtime, and spread-of-hours claims, for largely the same reasons that justify a finding of willfulness on the minimum wage and overtime claims under the FLSA. *See, e.g., Herman*, 172 F.3d at 142 (explaining that an employer's willful failure to comply with the FLSA despite its knowledge of the statute's requirements barred a good faith defense); *see also* Chen Dep. Tr. at 98:12-99:7 (testifying to his understanding that he was required to pay employees for an additional hour if their shifts exceeded ten hours). Defendants point to Chen's testimony that he increased employee pay after his prior legal problems, paid employees according to minimum wage charts, explained pay rates to employees in the hiring process, and wrote employees' wages on their payment envelopes. *See* Opposition at 21. But while Chen may have improved his labor practices, Defendants have provided no evidence that they attempted to comply with the specific obligations imposed by the minimum wage, overtime, and spread-of-hour laws.

"For example there is no evidence that [they] ever sought an expert or outside opinion" on whether their practices were sufficient. *Gustafson v. Bell Atl. Corp.*, 171 F. Supp. 2d 311, 327 (S.D.N.Y. 2001). In addition to the failure to show consultation with professionals, even after prior liability, Defendants' "flawed wage practices" surveyed throughout this Opinion and Order reveal a lack of reasonable efforts to comply with the law. *Chichinadze v. BG Bar, Inc.*, 517 F. Supp. 3d 240, 258 (S.D.N.Y. 2021). Plaintiffs thus are entitled to collect liquidated damages as to their minimum wage, overtime, and spread-of-hours claims under the FLSA or the NYLL.

Again, though, the evidence supporting liquidated damages is less overwhelming with respect to the tools-of-the-trade claims. Neither party addresses in their briefs whether Defendants acted in good faith when failing to reimburse Plaintiffs for their bicycles and related expenses. *See* Motion at 19-20; Opposition at 20-21. Moreover, as discussed above, the prior lawsuits did not concern tools-of-the-trade claims and Chen did not testify to Defendants' knowledge of those regulations. As such, the Court reserves ruling on liquidated damages for the tools-of-the-trade claims, under both the FLSA and the NYLL, until after a trial. *See Munoz-Gonzalez v. D.L.C. Limousine Serv., Inc.*, No. 15 Civ. 9368 (JPO), 2017 WL 2973980, at *8 (S.D.N.Y. July 12, 2017) (explaining that "summary judgment [as to liquidated damages was] inappropriate" when the parties only briefed the issue as to a different claim).

## IV. Conclusion

For the foregoing reasons, Plaintiffs' motion for summary judgment as to Defendants' liability on their wage-and-hour and notice claims is granted, except with respect to the portion of their tools-of-the-trade claims relating to bicycle accessories. Moreover, except on the tools-of-the-trade claims, the undisputed material facts establish that Defendants willfully violated the FLSA and that Plaintiffs are entitled to liquidated damages as to their federal and state wage-and-

hour claims.  The Clerk of Court is respectfully directed to close the motion pending at Docket Number 61.

SO ORDERED.

Dated: March 11, 2022
       New York, New York

_____
JOHN P. CRONAN
United States District Judge